## ·ATKIN v. KANSAS.

ERROR TO THE SUPREME COURT OF THE STATE OF KANSAS.

.No. 30. Submitted May 1, 1903.—Decided November 30, 1903.

Municipal corporations are, in every essential, only auxiliaries of the State for the purposes of local government. They may be created, or, having been created, may be destroyed, or their powers may be restricted, enlarged or withdrawn at the will of the Legislature, subject only to the fundamental condition that the collective and individual rights of the people of the municipality shall not thereby be destroyed.

The building of a highway whether done by the State directly, or by one of its instrumentalities—a municipality—is work of a public, not private, character.

It is within the power of a State, as guardian and trustee for its people and having full control of its affairs, to prescribe the conditions upon which it will permit public work to be done on behalf of itself or its municipalities.

In the exercise of these powers it may by statute provide that eight hours shall constitute a day's work for all laborers employed by or on behalf of· the State or any of its municipalities and making it unlawful for any one thereafter contracting to do any public· work to require or permit any laborer to work longer than eight hours per day except under certain specified conditions and requiring such contractors to pay the current rate of daily wages. And one who after the enactment of such a statute contracts for such public work is not by reason of its provisions deprived of his liberty or his property without due process of law nor denied the equal protection of the laws within the meaning of the Fourteenth Amendment even though it appear that the current rate of wages is based on private work where ten hours constitute a day's work or that the work in excess of eight hours per day is not dangerous to the health of the laborers.

Quære, whether a similar statute applicable to laborers on purely private · work would be constitutional, not decided.

THIS case involves the validity under the Constitution of the United States of the statute known as the eight-hour law · of Kansas of 1891, p. 192, c. 114, being sections 3827, 3828 and 3829 of the General Statutes of 1901 of that State.

By the first section of that act it was provided that "Eight hours shall constitute a day's work for all laborers, workmen,

mechanics or other persons now employed or who may hereafter be employed by or on behalf of the State of Kansas, or by or on behalf of any county, city, township or other municipality of said State, except in cases of extraordinary emergency which may arise in time of war, or in cases where it may be necessary to work more than eight hours per calendar day for the protection of property or human life: provided, That in all such cases the laborers, workmen, mechanics or other persons so employed and working to exceed eight hours per calendar day shall be paid on the basis of eight hours constituting a day's work: provided further, that not less than the current rate of per diem wages in the locality where the work is performed shall be paid to laborers, workmen, mechanics and other persons so employed by or on behalf of the State of Kansas, or any county, city, township or other municipality of said State; and laborers, workmen, mechanics and other persons employed by contractors or sub-contractors in the execution of any contract or contracts within the State of Kansas, or within any county, city, township or other municipality thereof, shall be deemed to be employed by or on behalf of the State of Kansas, or of such county, city, township or other municipality thereof."

The second section declared that "All contracts hereafter made by or on behalf of the State of Kansas, or by or on behalf of any county, city, township, or other municipality of said State, with any corporation, person or persons, for the performance of any work or the furnishing of any material manufactured within the State of Kansas, shall be deemed and considered as made upon the basis of eight hours constituting a day's work; and it shall be unlawful for any such corporation, person or persons to require or permit any laborer, workman, mechanic or other person to work more than eight hours per calendar day in doing such work or in furnishing or manufacturing such material, except in the cases and upon the conditions provided in section 1 of this act."

The third section makes any officer of Kansas, or of any

county, city, township or municipality of that State, or any person acting under or for such officer, or any contractor with the State, or any county, city, township or other municipality thereof, or other person violating any of the provisions of the act, liable for each offense, and subject to be punished by a fine of not less than $50 nor more than $1,000, or by imprisonment not more than six months, or by both fine and imprisonment, in the discretion of the court.

It may be stated that the act exempts existing contracts from its provisions.

The present prosecution was under the above act, and was commenced in one of the courts of Kansas.

The complaint in its first count charged that Atkin contracted with the municipal corporation of Kansas City to do the labor, and furnish all materials for the construction of a brick pavement upon Quindaro Boulevard, a public street of that city; and having hired one George Reese to shovel and remove dirt in execution of the work, did knowingly, wilfully and unlawfully permit and require him to labor ten hours each calendar day upon said work, there being no extraordinary emergency arising in time of war, nor any necessity for him to labor more than eight hours per day for the protection of property or of human life.

The second count contained the same allegations as to the general nature of Atkin's contract, and charged that he unlawfully hired Reese to labor on the basis of ten hours as constituting a day's work by contracting to pay the current rate of wages, which in that locality was the sum of $1.50 per day, and unlawfully exacted and required of him that he labor ten hours each calendar day in order to be entitled to the current wages of $1.50 per day, there being no extraordinary emergency arising in time of war, nor any necessity for him to labor more than eight hours for the protection of property or of human life.

The defendant moved to quash each count, upon the grounds, among others, that the statute in question, in violation of the

first section of the Fourteenth Amendment to the Constitution
of the United States, deprived him of his liberty and property
without due process of law and denied him the equal protec-
tion of the laws.

The motion to quash was overruled, and the case was heard
upon an agreed statement of facts.

It appears from that statement that the parties stipulated,
for the purposes of the case, that Kansas City was under a
duty to keep its streets and highways in repair, and make all
contracts to grade and pave them and for all other public im-
provements within its limits; that the defendant entered into
a contract with the city to construct a pavement on Quindaro
Boulevard, a public highway in that city, and employed,
among others, one George Reese to perform the labor of shovel-
ing and removing dirt in the prosecution of that work; per-
mitted him to work more than eight hours on each calendar
day, although there was no extraordinary emergency arising
in time of war, nor any necessity that he or any other person
engaged on the work should work more than eight hours for
the protection of property or human life; that the agreement
with Reese was to pay fifteen cents per hour and no more, the
current rate of wages for such work in that locality being $1.50
for ten hours' labor per day; and that the defendant exacted
and required of him that he work ten hours each calendar day
in order to be entitled to the current wages of $1.50 per day;
that if the contractor had been compelled to pay Reese and
other laborers at the rate of $1.50 per day for eight hours'
work, his compensation would have been diminished by one
hundred dollars; that Reese was not compelled, required or
requested to work more than eight hours in any one day, but
did so voluntarily, and was permitted and allowed to work
ten hours in each calendar day in order to earn $1.50 in a cal-
endar day; that he was employed at his own solicitation, and
entered into the agreement with Atkin freely, and worked at
the time and place mentioned in the complaint with the knowl-
edge, consent and permission of defendant; that it was not the

intention, expectation, desire or agreement of Reese or of the defendant that the former should ask, demand or receive the same compensation for eight hours' work as was paid for ten hours' work each calendar day to laborers doing the same kind of work for persons having contracts with private persons or corporations; that he was hired and employed without the knowledge or consent of the city, and neither the city nor its officers, had or exercised any control or supervision over him, he being the servant of the defendant and not of the city; and, that the contract between the defendant and the city did not contain any provision as to the number of hours laborers should work in a calendar day, nor any provision as to their compensation, but left the contractor free as to the means and manner of performing his contract.

It was also stipulated that the labor performed by Reese was healthful out-door work, not dangerous, hazardous or in any way injurious to life, limb or health, and could be performed for a period of ten hours during each working day of the week without injury from so doing, and that the labor he was employed to perform, and did perform, "was in no respect or manner more dangerous to the health or hazardous to life or limb or to the general welfare of the said George Reese or other persons doing such work than the labor performed by persons doing the same kind of or character of work as the employés *or* [of] contractors having contracts to do the same kind of work for private persons, firms or corporations, or as the servants of private persons, firms or corporations."

It was further stipulated that the work of shoveling and removing dirt in the construction of a pavement was in all respects the same whether the pavement be constructed for a city of other municipality or for a private person, firm or corporation.

Such was the case presented for the determination of the trial court.

The prosecution resulted in a judgment against the defendant, and he was sentenced to pay a fine of fifty dollars on each

count of the complaint. Motions in arrest of judgment and for new trial having been denied, the case was taken to the Supreme Court of Kansas, which affirmed the judgment and sustained the validity of the statute.

*Mr. T. A. Pollock* for plaintiff in error:

The provisions of the law of 1891 constituting eight hours a day's work for persons employed by contractors engaged in paving streets for cities and requiring such contractors to pay their employés for eight hours' work the current rate of wages for ten hours' work, in this case, are in conflict with section 1 of the Fourteenth Amendment to the Constitution of the United States.

Such provisions deprive the plaintiff in error of his liberty and property without due process of law.

For legal meaning of word "liberty," see *Williams* v. *Fears*, 179 U. S. 270; *Allgeyer* v. *Louisiana*, 165 U. S. 578; *Butchers' Union &c.* v. *Crescent City Live Stock Co.*, 111 U. S. 746, and see also p. 755; *Bracewell* v. *People*, 147 Illinois, 65; *S. C.*, 35 N. E. Rep. 62; *State* v. *Coal Co.*, 36 W. Va. 856; *S. C.*, 15 S. E. Rep. 1000. As to due process of law see *Holden* v. *Hardy*, 169 U. S. 366. The provisions also deny the contractor equal protection of the laws. The act is class legislation; it discriminates without reason. It has been held not to apply to contractors for work on penitentiaries or charitable institutions. *State* v. *Martindale*, 47 Kansas, 147. For purpose of the law, see *In re Ashby*, 60 Kansas, 106. The Fourteenth Amendment was passed to prevent discriminations and class legislation. The words "due process of law" and "equal protection of laws" are synonymous with "the law of the land." They mean a law binding upon every member of the community under similar circumstances. *Wally's Heirs* v. *Kennedy*, 2 Yerg, 554; *Bank* v. *Okely*, 4 Wheat. 235; *State* v. *Loomis*, 115 Missouri, 307; *S. C.*, 22 S. W. Rep. 351; *County of Santa Clara* v. *R. R. Co.*, 18 Fed. Rep. 398; *Ex parte Virginia*, 100 U. S. 339; *Barbier* v. *Connolly*, 113 U. S. 27. The power of legislatures to classify subjects of

legislation is conceded but this does not mean arbitrary designation. *Connolly* v. *Union Sewer Pipe Co.*, 184 U. S. 540; *Missouri* v. *Lewis*, 101 U. S. 22, 31. The equal protection of the laws is a pledge of the protection of equal laws. *Yick Wo* v. *Hopkins*, 118 U. S. 356, 369; *Duncan* y. *Missouri*, 152 U. S. 377; *Hayes* v. *Missouri*, 120 U. S. 350; *Gulf &c. R. R. Co.* v. *Ellis*, 165 U. S. 150; *State* v. *Hammer*, 42 N. J. L. 438; *Appeal of Ayars*, 122 Pa. St. 266; *S. C.*, 16 Atl. Rep. 363. The courts determine whether the classification is arbitrary. *Pell* v. *Newark*, 40 N. J. L. 79; *Connolly* v. *Pipe Co.*, *supra*; *Holden* v. *Hardy*, 169 U. S. 366.

Similar labor laws have been held unconstitutional. *New York State* v. *Coler*, 166 N. Y. 18; *S. C.*, 59 N. E. Rep. 716; *People* v. *Coler*, 67 N. Y. Supp. 701. A municipal corporation in matters affecting its property and private contract rights enjoys practically the same immunity from legislative interference for the benefit of private corporations or individuals as is accorded to business corporations and private citizens. *Board of Park Comrs.* v. *Detroit*, 28 Michigan, 228; *Citizens' Sav. & Loan Assn.* v. *Topeka*, 87 U. S. 655; *People* v. *Batchellor*, *supra*; *Weismer* v. *Village of Douglas*, 64 N. Y. 91; *Board* v. *Blodgett*, 155 Illinois, 441; 40 N. E. Rep. 1025; *People* v. *Orange Co. Road Assn.*, 66 N. E. 895 ; Ohio, *Cleveland* v. *Clement Bros.*, 65 N. E. Rep. 885, citing *Palmer* v. *Tingle*, 55 Ohio St. 425 ; 45 N. E. Rep. 313; Indiana, *Street* v. *Varney Electrical Supply Co.*, 67 N. E. 129 ; California, *In re Kubach*, 85 California, 274; 24 Pac. Rep. 737; Illinois, *Fiske* v. *People*, 188 Illinois, 206; 58 N. E. Rep. 985, citing *Ritchie* v. *People*, 155 Illinois, 98; 40 N. E. Rep. 1028; *United States* v. *Marshall*, 94 U. S. 400; Washington, *Seattle* v. *Smyth*, 22 Washington, 327; 60 Pac. Rep. 1120; Nebraska, *Low* v. *Rees Printing Co.*, 41 Nebraska, 127; 59 N. W. Rep. 362, citing *Trumble* v. *Trumble*, 37 Nebraska, 340; Colorado, *In re Morgan*, 58 Pac. Rep. 1071; *In re Eight Hour Law*, 21 Colorado, 29; 39 Pac. Rep. 328; Missouri, *State* v. *Loomis*, 155 Missouri, 307; 22 S. W. Rep. 350; Kansas, *State* v. *Haun*, 61 Kansas, 146; 59 Pac. Rep. 340. See Cooley's Const. Lim. 6th ed. 484.

The courts of almost every State in the Union have united in declaring such legislation as is attempted in the act under consideration to be unconstitutional, vicious and void. In addition to the cases heretofore cited, see *In re Jacobs*, 98 N. Y. 98; *People* v. *Mark*, 99 N. Y. 378; *People* v. *Gilson*, 109 N. Y. 389; *Colon* v. *Lisk*, 153 N. Y. 188; *People* v. *Hawkins*, 157 N. Y. 1; *People ex rel. Tyroler* v. *Warden of City Prison*, 157 N. Y. 116; *People ex rel. Treat* v. *Coler*, 166 N. Y. 144; *Godcharles* v. *Wigeman*, 113 Pennsylvania, 431; 6 Atl. Rep. 354; *Bramley* v. *Norton*, 5 Ohio N. P. 183; *State* v. *Goodwill*, 33 West Va. 179; 10 S. E. Rep. 285; *State* v. *Fire Creek Co.*, 33 West Va. 188; 10 S. E. Rep. 288; *Ramsey* v. *People*, 142 Illinois, 380; *Frorer* v. *People*, 141 Illinois, 171; *Braceville Coal Co.* v. *People*, 147 Illinois, 66; 35 N. E. Rep. 62; *Ritchie* v. *People*, 155 Illinois, 98; *Gillespie* v. *People*, 58 N. W. Rep. 1007; *In re Preston*, 59 N. W. Rep. 109; *Commonwealth* v. *Perry*, 155 Massachusetts, 1107; *City of Denver* v. *Bach*, 58 Pac. Rep. 1089.

The Supreme Court of Kansas followed *In re Dalton*, 61 Kansas, 257; 59 Pac. Rep. 336. In this case as well as in that case there are flagrant errors. The statute is not a mere rule of procedure for the State or its municipalities but affects many persons who are in no sense the agents of the State or its municipalities. The statute was not to prevent cities abusing their power to improve streets and levy taxes, but to reduce the toil of certain laborers without reducing their pay. The State is not a person within the meaning of that word as used in the Fourteenth Amendment. The constitution of Kansas prevents the State from being a party in carrying on any works of internal improvement. As to this see *Attorney General* v. *Pingree*, 79 N. W. Rep. (Michigan) 814; *People* v. *Board*, 25 Michigan, 152.

Employés of contractors are not employés of cities. *United States* v. *Driscoll*, 96 U. S. 421. Contracts for paving streets are matters pertaining to cities in their private corporate capacity. *Commissioners* v. *Topeka*, 39 Kansas, 197; *Hari* v. *Ohio Township*, 62 Kansas, 318. The duty to repair streets

is private, not governmental. *Lynn* v. *Turner,* Cowp. 86; *Henley* v. *Lyme Regis,* 5 Ring. 91; Jones on Negligence of Mun. Corp. § 58; *Livingston* v. *Thompson,* 68 S. W. Rep. 477; *O'Rouke* v. *City of Sioux Falls,* 54 N. W. Rep. 1044. In *Norwood* v. *Baker,* 172 U. S. 169, it was held that special assessments cannot be levied in excess of special benefits. See *Gilmore* v. *Hentig,* 33 Kansas, 156; *Mason* v. *Spencer,* 35 Kansas, 512; *Newman* v. *Emporia,* 41 Kansas, 583; *Atchison* v. *Price,* 45 Kansas, 296.

With respect to its private or proprietary rights and interests, a municipal corporation is entitled to the protection of the constitution, like other corporations. *City of New Orleans* v. *New Orleans Water Works Co.,* 142 U. S. 79; *State* v. *Denny* (Indiana), 21 N. E. Rep. 252; *Saving Fund Soc'y* v. *Philadelphia,* 31 Pennsylvania, 183; 72 Am. Dec. 730; *State* v. *Fox* (Indiana), 63 N. E. Rep. 19; *Board of Park Commissioners* v. *Detroit,* 28 Michigan, 240; cited approvingly in *Blades* v. *Board &c.* (Michigan), 81 N. W. Rep. 271; *Helena Consol. Water Co.* v. *Steele,* 20 Montana, 1; 49 Pac. Rep. 382; *People* v. *Chicago,* 51 Illinois, 17; Dillon's Munc. Cor. 4th ed. 129; article on "The Right to Local Self-Government," 13 Harv. Law Rev. 441, and cases there cited; *Stockwell* v. *Rutland,* 53 At. 132; *Peters* v. *Lindsborg,* 40 Kansas, 654; *La Clef* v. *Concordia,* 41 Kansas, 323; *Caldwell* v. *Prunelle,* 57 Kansas, 511.

The legal distinction between municipal corporations proper —cities—and *quasi* corporations has been often recognized and enforced in the State of Kansas. *Beach* v. *Leahy,* 11 Kansas, 23; *Illinois T. & S. Bank* v. *Arkansas City,* 22 C. C. A. 271; *State* v. *Topeka Water Co.,* 61 Kansas, 547; *State* v. *Hunter,* 38 Kansas, 582.

The question as to whether a city in contracting to pave a street is acting in its private capacity, as a representative of its citizens, is a question of general law not dependent upon any constitutional or statutory provision of the State of Kansas.

The state court cites *People* v. *Beck,* 30 N. Y. Supp. 473, now overruled, and *United States* v. *Martin,* 94 U. S. 400. This

court is not bound by the decision of the state court, but will determine for itself the law of this case. *Olcott* v. *Supervisors*, 16 Wall. 678. The statute may be held void as to cities and their contractors only. It might be held constitutional as to the state and *quasi* public corporations such as counties, townships and school districts and unconstitutional as to cities. *Emporia* v. *Norton*, 13 Kansas, 570.

The statute so far as it limits the hours of employment on public works has no relation to the public health, safety or morals and cannot be held valid as a police regulation. *People* v. *Beck*, 10 Misc. N. Y. 83; *State* v. *Martindale*, 47 Kansas, 147; *Holden* v. *Hardy*, 169 U. S. 366, related to a statute passed under constitutional provisions as to health of miners, and *People* v. *Phyfe*, 136 N. Y. 554; *Commonwealth* v. *Hamilton Mfg. Co.*, 120 Massachusetts, 383; *United States* v. *Martin*, 94 U. S. 400, are not applicable.

The plaintiff in error has not waived his right to question the constitutionality of the statute under consideration. He was advised by counsel and contracted under the belief that the statute under consideration was unconstitutional and void. The contract did not contain any stipulation with reference to the hours of labor or the compensation to be paid to laborers. Even if the contract had contained such provisions they would not prevent the plaintiff from attacking the constitutionality of the statute. *Cleveland* v. *Clements Bros.*, 65 N. E. Rep. 885; *People* v. *Coler*, 166 N. Y. 1; *Marshall* v. *Nashville*, 71 S. W. Rep. 815; *Sweet* v. *People*, 65 N. E. Rep. 1094; *People* v. *Featherstonhaugh*, 64 N. E. Rep. 802.

Even if the Legislature had the right to regulate the hours of labor of persons employed by a municipal corporation, nevertheless the statute in question is not justified, because it is as well, an encroachment upon the right of the individual employer and employé to contract as they shall see fit; and the fact that the Legislature has chosen for the execution of its unlawful purpose the medium of the state and municipal corporations cannot prevent this court from setting aside the

statute as an insidious attempt to encroach upon individual rights and liberties. *Chicago, B. & Q. R. Co.* v. *Chicago,* 166 U. S. 126, and cases cited; *Foster* v. *Scott,* 136 N. Y. 577.

*Mr. C. C. Coleman,* Attorney General of the State of Kansas, and *Mr. N. H. Loomis,* for defendant in error:

For thirteen years this law has been one of the features of state legislation in Kansas. Every city, every county, every municipality, which has let a contract, and every contractor who has made a bid therefor, for public work in Kansas, for thirteen years, has done so with the full knowledge of the law. Every laboring man in the State for so long has known of the advantage to him of employment upon public enterprises carried on under the direct or indirect authority of the State. Whenever assailed the law has received the sanction of the highest courts of the State. *In re Ashby,* 60 Kansas, 160; *In re Dalton,* 61 Kansas, 255, 257; *The State* v. *Atkin,* 64 Kansas, 174.

It is similar to the United States eight hour law upheld in *United States* v. *Martin,* 94 U. S. 400. Appellant's liberty has not been disturbed.

The theory upon which the Supreme Court of Kansas in this and similar cases has proceeded is: *First,* that the opening, improvement and maintenance of public highways, the construction of court-houses, the requirements for street and road work, are public governmental functions, for which the State is primarily responsible, and the maintenance and performance of which the sovereign people have the right to require at the hands of the State. *State* v. *Atkin,* 64 Kansas, 176; *People* v. *Flagg,* 46 N. Y. 401.

*Second,* that cities, counties, and other municipal organizations, in so far as their control of such enterprises is concerned, are but agencies of the State for carrying out these governmental functions. General Statutes, 1901, § 727, subd. 34; *In re Dalton,* 61 Kansas, 264, and cases cited; *Williams* v. *Eggleston,* 171 U. S. 310; *Kelly* v. *Pittsburg,* 104 U. S. 78; *For-*

*syth* v. *Hammond*, 166 U. S. 518; *People* v. *Beck*, 10 Misc. N. Y. 77.

*Third,* that contractors with the State or city must make their estimates with reference to the state's regulations of wages and hours, and doing so are fully protected in their rights. There is no discrimination against appellant.

Unless it appears from the law itself, or from the facts of the case at bar, that some discrimination is exercised or exerted against the plaintiff himself, he cannot be heard to say in opposition to the law that the rights of some other person or class of persons are infringed by it. He can only complain if his own rights are offended against. This principle is fundamental. *State* v. *Smiley,* 69 Pac. Rep. 199; *City* v. *Railway Co.,* 59 Kansas, 427; *Clark* v. *City,* 176 U. S. 114; *Supervisors* v. *Stanley,* 105 U. S. 305; *Railroad Co.* v. *Montgomery,* 152 Indiana, 1; 74 Am. St. Rep. 302, 311.

The paving of a street is a governmental power. *Branson* v. *Philadelphia,* 47 Pennsylvania, 329; *State* v. *Commissioners,* 28 Kansas, 431. There is no claim made that the statute is enacted peculiarly by virtue of the police power of the State.

MR. JUSTICE HARLAN, after making the foregoing statement, delivered the opinion of the court.

The case has been stated quite fully, in order that there may be no dispute as to what is involved and what not involved in its determination.

No question arises here as to the power of a State, consistently with the Federal Constitution, to make it a criminal offense for an employer in purely private work in which the public has no concern, to permit or to require his employés to perform daily labor in excess of a prescribed number of hours. One phase of that general question was considered in *Holden* v. *Hardy,* 169 U. S. 366, in which it was held that the Constitution of the United States did not forbid a State from enacting a statute providing—as did the statute of Utah there involved

—that in all underground mines or workings and in smelters and other institutions for the reduction or refining of ores or metals, the period of the employment of workmen should be eight hours per day, except in cases of emergency when life or property is in imminent danger. In respect of that statute, this court said: "The enactment does not profess to limit the hours of all workmen, but merely those who are employed in underground mines, or in the smelting, reduction or refining of ores or metals. These employments, when too long pursued, the legislature has judged to be detrimental to the health of the employés, and so long as there are reasonable grounds for believing that this is so, its decision upon this subject cannot be reviewed by the Federal Courts. While the general experience of mankind may justify us in believing that men may engage in ordinary employments more than eight hours per day without injury to their health, it does not follow that labor for the same length of time is innocuous when carried on beneath the surface of the earth, where the operative is deprived of fresh air and sunlight, and is frequently subjected to foul atmosphere and a very high temperature, or to the influence of noxious gases, generated by the processes of refining or smelting."

As already stated, no such question is presented by the present record; for, the work to which the complaint refers is that performed on behalf of a municipal corporation, not private work for private parties. Whether a similar statute, applied to laborers or employés in purely private work, would be constitutional, is a question of very large import, which we have no occasion now to determine or even to consider.

Assuming that the statute has application only to labor or work performed by or on behalf of the State, or by or on behalf of a municipal corporation, the defendant contends that it is in conflict with the Fourteenth Amendment. He insists that the Amendment guarantees to him the right to pursue any lawful calling, and to enter into all contracts that are proper, necessary or essential to the prosecution of such calling; and

that the statute of Kansas unreasonably interferes with the
exercise of that right, thereby denying to him the equal pro-
tection of the laws. *Allgeyer* v. *Louisiana*, 165 U. S. 578;
*Williams* v. *Fears*, 179 U. S. 270. In this connection, refer-
ence is made by counsel to the judgment of the Supreme Court of
Kansas in *Ashby's Case*, 60 Kansas, 101, 106, in which that court
said: "When the eight-hour law was passed the Legislature
had under consideration the general subject of the length of
a day's labor, for those engaged on public works at manual
labor, without special reference to the purpose or occasion of
their employment. The leading idea clearly was to limit the
hours of toil of laborers, workmen, mechanics, and other per-
sons in like employments, to eight hours, without reduction
of compensation for the day's services."

"If a statute," counsel observes, "such as the one under
consideration is justifiable, should it not apply to all persons
and to all vocations whatsoever? Why should such a law be
limited to contractors with the State and its municipalities?
. . . Why should the law allow a contractor to agree with
a laborer to shovel dirt for ten hours a day in performance of
a private contract, and make exactly the same act under simi-
lar conditions a misdemeanor when done in the performance
of a contract for the construction of a public improvement?
Why is the liberty with reference to contracting restricted in
the one case and not in the other?"

These questions—indeed, the entire argument of defendant's
counsel—seem to attach too little consequence to the rela-
tion existing between a State and its municipal corporations.
Such corporations are the creatures, mere political subdivi-
sions, of the State for the purpose of exercising a part of its
powers. They may exert only such powers as are expressly
granted to them, or such as may be necessarily implied from
those granted. What they lawfully do of a public character
is done under the sanction of the State. They are, in every
essential sense, only auxiliaries of the State for the purposes
of local government. They may be created, or, having been

created, their powers may be restricted or enlarged, or altogether withdrawn at the will of the Legislature; the authority of the Legislature, when restricting or withdrawing such powers, being subject only to the fundamental condition that the collective and individual rights of the people of the municipality shall not thereby be destroyed. *Rogers* v. *Burlington*, 3 Wall. 654, 663; *United States* v. *Railroad Co.*, 17 Wall. 322, 328–329; *Mount Pleasant* v. *Beckwith*, 100 U. S. 514, 525; *State Bank of Ohio* v. *Knoop*, 16 How. 369, 380; *Hill* v. *Memphis*, 134 U. S. 198, 203; *Barnett* v. *Denison*, 145 U. S. 135, 139; *Williams* v. *Eggleston*, 170 U. S. 304, 310. In the case last cited we said that "a municipal corporation is, so far as its purely municipal relations are concerned, simply an agency of the State for conducting the affairs of government, and as such it is subject to the control of the Legislature." It may be observed here that the decisions by the Supreme Court of Kansas are in substantial accord with these principles. That court, in the present case, approved what was said in *City of Clinton* v. *Cedar Rapids & Missouri River R. R. Co.*, 24 Iowa, 455, 475, in which the Supreme Court of Iowa said: "Municipal corporations owe their origin to, and derive their powers and rights wholly from, the Legislature. It breathes into them the breath of life, without which they cannot exist. As it creates, so it may destroy. If it may destroy, it may abridge and control. Unless there is some constitutional limitation on the right, the Legislature might, by a single act, if we can suppose it capable of so great a folly and so great a wrong, sweep from existence all of the municipal corporations of the State, and the corporations could not prevent it. We know of no limitation on this right so far as the corporations themselves are concerned. They are, so to phrase it, the mere tenants at will of the Legislature." See also *In re Dalton*, 61 Kansas, 257; *State ex rel.* v. *Lake Koen Co.*, 63 Kansas, 394; *State ex rel.* v. *Com'rs of Shawnee Co.*, 28 Kansas, 431, 433; *Mayor &c.* v. *Groshon*, 30 Maryland, 436, 444.

The improvement of the Boulevard in question was a work

of which the State, if it had deemed it proper to do so, could have taken immediate charge by its own agents; for, it is one of the functions of government to provide public highways for the convenience and comfort of the people. Instead of undertaking that work directly, the State invested one of its governmental agencies with power to care for it. Whether done by the State directly or by one of its instrumentalities, the work was of a public, not private, character.

If, then, the work upon which the defendant employed Reese was of a public character, it necessarily follows that the statute in question, in its application to those undertaking work for or on behalf of a municipal corporation of the State, does not infringe the personal liberty of any one. It may be that the State, in enacting the statute, intended to give its sanction to the view held by many, that, all things considered, the general welfare of employés, mechanics and workmen, upon whom rest a portion of the burdens of government, will be subserved if labor performed for eight continuous hours was taken to be a full day's work; that the restriction of a day's work to that number of hours would promote morality, improve the physical and intellectual condition of laborers and workmen and enable them the better to discharge the duties appertaining to citizenship. We have no occasion here to consider these questions, or to determine upon which side is the sounder reason; for, whatever may have been the motives controlling the enactment of the statute in question, we can imagine no possible ground to dispute the power of the State to declare that no one undertaking work *for it or for one of its municipal agencies*, should permit or require an employé on such work to labor in excess of eight hours each day, and to inflict punishment upon those who are embraced by such regulations and yet disregard them. It cannot be deemed a part of the liberty of any contractor that *he* be allowed to do public work in any mode he may choose to adopt, without regard to the wishes of the State. On the contrary, it belongs to the State, as the guardian and trustee for its people, and having control of its affairs, to pre-

scribe the conditions upon which it will permit public work to be done on its behalf, or on behalf of its municipalities. No court has authority to review its action in that respect. Regulations on this subject suggest only considerations of public policy. And with such considerations the courts have no concern.

If it be contended to be the right of every one to dispose of his labor upon such terms as he deems best—as undoubtedly it is—and that to make it a criminal offense for a contractor for public work to permit or require his employé to perform labor upon that work in excess of eight hours each day, is in derogation of the liberty both of employés and employer, it is sufficient to answer that no employé is entitled, of absolute right and as a part of his liberty, to perform labor for the State; and no contractor for public work can excuse a violation of his agreement with the State by doing that which the statute under which he proceeds distinctly and lawfully forbids him to do.

So, also, if it be said that a statute like the one before us is mischievous in its tendencies, the answer is that the responsibility therefor rests upon legislators, not upon the courts. No evils arising from such legislation could be more far-reaching than those that might come to our system of government if the judiciary, abandoning the sphere assigned to it by the fundamental law, should enter the domain of legislation, and upon grounds merely of justice or reason or wisdom annul statutes that had received the sanction of the people's representatives. We are reminded by counsel that it is the solemn duty of the courts in cases before them to guard the constitutional rights of the citizen against merely arbitrary power. That is unquestionably true. But it is equally true—indeed, the public interests imperatively demand—that legislative enactments should be recognized and enforced by the courts as embodying the will of the people, unless they are plainly and palpably, beyond all question, in violation of the fundamental law of the Constitution. It cannot be affirmed of

the statute of Kansas that it is plainly inconsistent with that instrument; indeed its constitutionality is beyond all question.

Equally without any foundation upon which to rest is the proposition that the Kansas statute denied to the defendant or to his employé the equal protection of the laws. The rule of conduct prescribed by it applies alike to all who contract to do work on behalf either of the State or of its municipal subdivisions, and alike to all employed to perform labor on such work.

Some stress is laid on the fact, stipulated by the parties for the purposes of this case, that the work performed by defendant's employé is not dangerous to life, limb or health, and that daily labor on it for ten hours would not be injurious to him in any way. In the view we take of this case, such considerations are not controlling. We rest our decision upon the broad ground that the work being of a public character, absolutely under the control of the State and its municipal agents acting by its authority, it is for the State to prescribe the conditions under which it will permit work of that kind to be done. Its action touching such a matter is final so long as it does not, by its regulations, infringe the personal rights of others; and that has not been done.

The judgment of the Supreme Court of Kansas is

*Affirmed.*

The CHIEF JUSTICE, MR. JUSTICE BREWER and MR. JUSTICE PECKHAM, dissent.