THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, *v.* I. M. LUDINGTON'S SONS, INC., Defendant.

(County Court, Orleans County, November, 1911.)

Treaties — Construction of treaties — Guaranty of civil and commercial rights to aliens; Equal protection of the laws.

> Section 14 of the Labor Law which provides that none but citizens of the United States shall be employed upon public works of the State of New York is not in contravention of the rights of

subjects of other sovereignties under treaties guaranteeing to them the most constant protection and security for their persons and property and the enjoyment in that respect of the same rights and privileges as are or shall be granted to natives and also granting to such foreign subjects liberty to carry on trade and generally to do anything incident to, or necessary to, trade, upon the same terms as native citizens or subjects.

DEMURRER to an indictment.

John C. Knickerbocker, district attorney, for plaintiff.

Edward M. Grout and Paul Grout, for defendant.

Lewis, McKay & McMillan, Clarence W. McKay, of counsel for defendant.

Edward M. Grout and James F. McKinney, of counsel for defendant.

Gino C. Speranza for consul general of Italy.

SIGNOR, J.   Section 14 of the Labor Law of the State of New York provides that, in the construction of public works by the State or a municipality, or by persons contracting within the State or employed by the State, only citizens of the United States shall be employed; and that in such contracts for the construction of public works a provision shall be inserted to the effect that, if the provisions of this section are not complied with, the contract shall be void. It is also provided that a violation of this section shall constitute a misdemeanor, and shall be punishable by a fine of not less than $50 or more than $500, or by imprisonment for not less than thirty or more than ninety days, or by both such fine and imprisonment.

The defendant is indicted for a violation of this section. The indictment alleges that the corporation defendant entered into a contract in writing with the State of New York by the duly authorized officer or officers of said State for the work

of improving the State canal, as authorized by chapter 147 of the laws of 1903, as amended; the commencement of work under said contract on the Erie canal, the same being public works of the State of New York; and that, during the months of February, March, April and May, 1911, the defendant unlawfully hired, employed, engaged, allowed and permitted to be hired, employed and engaged to work and did work on said public works divers persons who were not then and there citizens of the United States of America but were aliens; and the indictment also alleges that some of the men employed were subjects of the Kingdom of Great Britain, some of the Kingdom of Spain, some were subjects of the Kingdom of Italy and some of various other nationalities to the grand jury unknown.

The defendant demurred to the indictment on the ground that it was unconstitutional and in violation of treaty rights with the various countries of which the men employed were citizens. It was claimed and conceded on the argument that, if it was in violation of treaty rights existing between the United States and any of the countries named, the law would be in effect unconstitutional and void. It was also conceded that the citizens of any of the countries mentioned in the indictment were entitled to all the privileges contained in any treaty with any nation, by virtue of the most favored nation clause contained in the treaties with England, Spain and Italy. Counsel for the defendant, in their brief, cited the treaties with twenty-six different nations. The treaty with Italy guarantees its subjects the most constant protection and security for their persons and property and that they shall enjoy in this respect the same rights and privileges as are or shall be granted to natives. The treaty with Spain provides that the citizens and subjects of each country can freely exercise their industry or their business without being subject as to their persons or property to any conditions other or more onerous than those that are imposed or may be imposed upon the citizens or subjects of the most favored nation. A recent treaty with Japan, especially relied upon, provides that the citizens or subjects of such country shall have liberty to carry on trade and generally to do anything

incident· to, or necessary to, trade, upon the same terms as native citizens or subjects. It was claimed by counsel for the defendant that, by virtue of the provisions in these various treaties guaranteeing security and protection of the rights of citizens of these countries and of their property, the provision of the Labor Law in regard to the employment of un-naturalized foreigners was not only unconstitutional, but was a direct violation of the treaty rights, inasmuch as it restricted the field of labor of such foreigners; and that restricting their rights to acquire property by means of labor was, in effect, to deprive them of property, and placed upon them conditions and burdens more onerous than those imposed upon citizens or subjects.

I am unable to find that this exact question has been passed upon in the cases cited; but, in my opinion, this claim is too broad to be applied to contracts made with the State or its agents. I think that an examination of the cases in the various courts, while they have largely arisen with reference to laws which have forbidden corporations to employ laborers for a longer period than eight hours a day, will show that a distinction has been preserved between cases where the Legislatures of the various States have sought to impose·restrictions upon private corporations, and where they have been declaratory of the policy of the State with reference to the management of its own affairs and the prosecution of its own public works.

The case of Atkin v. State of Kansas, 191 U. S. 207, is a case which seems to be very much in point. The appeal was from a conviction for the violation of the eight hour law. Mr. Justice Harlan delivered the opinion and stated that the case involved the validity, under the Constitution of the United States, of the statute known as the Eight Hour Law of Kansas. The first section of the act provided that eight hours should constitute a day's work on behalf of laborers, workmen and mechanics or other persons employed by the State, or on behalf of any city, county, township or other municipality of said State, except in cases of extraordinary emergency. It will be seen that the wording of the statute as to the employer is practically the same as the portion of

the Labor Law of the State of New York now under consideration.

The second section of the act provided that all contracts made on behalf of the State, or any county, city, township or other municipality, with any corporation or person for the performance of any work should be on the basis of eight hours constituting a day's work, and that it should be unlawful for any corporation or person to require or permit on such work more than eight hours' work in a calendar day.

The third section provided a fine of not less than $50 or more than a $1,000, or imprisonment for not more than six months, or both fine and imprisonment in the discretion of the court, for violation of any provisions of the act.

The complaint charged Atkin with having contracted with the municipal corporation of Kansas City to do certain work, and having hired one George Reese and unlawfully permitted and required him to labor ten hours each calendar day.

The second count charged that he required Reese to work ten hours a day in order to receive $1.50 per day which was the current wages.

It was claimed that the statute was in violation of the first section of the Fourteenth Amendment of the Constitution of the United States and deprived him of his liberty and property without due process of law, and denied him the equal protection of the laws. The motion to quash the indictment was denied. Justice Harlan said: "No question arises here as to the power of a state, consistently with the Federal Constitution, to make it a criminal offense for an employer, in purely private work, in which the public has no concern, to permit or to require his employees to perform daily labor in excess of a prescribed number of hours. * * * Whether a similar statute applying to laborers or employees in purely private work would be constitutional is a question of very large import, which we have no occasion now to determine or even to consider."

But Atkin, the plaintiff in error, claimed that, even assuming that the statute applied only to work performed for the State or municipal corporations, it was in conflict with the Fourteenth Amendment of the Constitution which guar-

anteed to him the right to pursue any lawful calling and to enter into all contracts that are proper.

The court further said: "These questions, indeed the entire argument of the defendant's counsel, seems to attach too little consequence to the relation existing between a state and its municipal corporations. Such corporations are the creatures, mere political subdivisions, of the state for the purpose of exercising a part of its powers. * * * They are, in every essential sense, only auxiliaries of the state for the purposes of local government."

And, quoting from the case of Williams v. Eggleston, 170 U. S. 304, the court further said: "A municipal corporation is, so far as its purely municipal relations are concerned, simply an agent of the state for conducting the affairs of government, and, as such, it is subject to the control of the legislature."

Again, the court says; "If then the work upon which the defendant employed Reese was of a public character, it necessarily follows that the statute in question, in its application to those undertaking work for or on behalf of a municipal corporation of the State, does not infringe on the personal liberty of any one."

The court said that it had no occasion to consider the motives or reasons for enacting the law, "for whatever may have been the motives controlling the enactment of the statute in question, we can imagine no possible ground to dispute the power of the state to declare that no one undertaking work for it, or for one of its municipal agencies, shall permit or require any employee on such work to labor in excess of eight hours each day. * * * It cannot be deemed a part of the liberty of any contractor that he be allowed to do public work in any mode he may choose to adopt, without regard to the wishes of the state. * * * We reached our decision upon the broad ground that the work being of a public character absolutely under the control of the state and its municipal agents acting by its authority, it is for the state to prescribe the conditions under which it will permit work of that kind to be done."

In the case of People v. Orange County Roads Cons. Co.,

175 N. Y. 84, a law prohibiting any person or corpo-
ration, contracting for a State or municipal corporation, re-
quiring more than eight hours per day was held unconstitu-
tional. The question arose before the amendment to the
Constitution under which the law under consideration was
passed, and in that case the court said the statute could not
be upheld on the ground that it applied to State work and
that, therefore, the Legislature could prescribe the rule for
the manner in which it is to be performed, and assigned as a
reason that, in the absence of a reservation to that effect in
the contract, the State could not dictate to the contractor the
details of its performance. As I have said, this was prior
to the amendment to the Constitution, and the law enacted
since the amendment especially covers this by providing that
all contracts shall contain a provision " to the effect, that
if the provisions of this section [§ 14] are not complied with
the contract shall be void."

And in the case of People ex rel. Williams E. & C. Co. v.
Metz, 193 N. Y. 148, in which the constitutionality of the
present act was sustained so far as related to the number of
hours which should constitute a day's work, it was held that
this was a constitutional exercise of the legislative power, ex-
pressly conferred by section 1 of article XII of the State
Constitution as amended. Judge Vann in his opinion in the
case said, after reviewing the decisions which undoubtedly
led to the amendment of the Constitution, that prior to
January 1, 1906, the power did not exist, and that for that
reason certain decisions made under the Constitution before
it was thus amended do not now apply. Citing People ex rel.
Rodgers v. Coler, 166 N. Y. 1; People ex rel. Treat v.
Coler, 166 id. 144; People v. Orange County Roads Cons.
Co., 175 id. 84; People ex rel. Cossey v. Grout, 179 id. 417,
as cases which especially do not apply under the present
Constitution. He also said, at page 159; "As the legisla-
ture has power to regulate and fix the hours of labor on public
work, it has the incidental power to compel obedience to its
commands by mild or severe penalties, as it sees fit. The
method of enforcement is for it to determine. It can make

violation a crime punishable by fine or imprisonment or both, or provide for a forfeiture of the contract, or prohibit payment for work done thereunder.   *   *   *   Our conclusion upon this branch of the case is that in view of the history of the amendment in question and the causes which led to it the legislature now has power and had when the present Labor Law was enacted to fix and regulate the hours of labor on public work by limiting them to eight hours in one calendar day and to provide that when that limit is exceeded no officer of state or municipal government shall be permitted to pay therefor from funds under his official control." He also says, quoting from Hunter v. Pittsburgh, 207 U. S. 161, 178: " Municipal corporations are political subdivisions of the State, created as convenient agencies for exercising such of the governmental powers of the State as may be intrusted to them."   He further says:    " We regard discussion of the question involving discrimination between persons employed by private individuals and those employed by municipal corporations as foreclosed by the decision of the Supreme Court of the United States in Atkin v. Kansas, 191 U. S. 207, 220."   And, after quoting very largely from that decision, which he says was cited with approval in the somewhat analogous case of Ellis v. United States, 206 U. S. 246, 255, he says: " We close this branch of the discussion by quoting from the latest utterance upon the subject by the court of last resort upon Federal questions to which our attention has been called (Muller v. Oregon, 208 U. S. 412, 421): ' It is undoubtedly true, as more than once declared by this court, that the general right to contract in relation to one's business is part of the liberty of the individual, protected by the Fourteenth Amendment to the Federal Constitution; yet it is equally well settled that this liberty is not absolute and extending to all contracts, and that a State may, without conflicting with the provisions of the Fourteenth Amendment, restrict in many respects the individual's power to contract.' "

The cases cited on behalf of the defendant are nearly all cases arising under the Constitutions of States which forbid the employment of Chinese or of some one nationality by *any corporation* within the State.   So far as I have been able

to ascertain, none of them are cases like the present one where the law only applied to work performed for the State or some of its agencies.

In the case Matter of Tiburcio Parrott, 1 Fed. Rep. 481, which seems to be a leading case and typical of the others that have been cited, the statute forbade the employment of Chinese, directly or indirectly, by *any* corporation formed under the laws of the State; and the validity of the law was the only question for consideration. It will be observed that, in these cases, the State was not only arranging for the employment of laborers on its own public works, but went further and extended the prohibition to private corporations; and, in those cases, the courts have universally held that it was a violation of the rights of the corporations, as well as of the rights of the individuals whom they were prohibited from employing. In line with the reasoning that the State has the right to select its own employees are a number of acts now in force in the United States. The Act of June 19, 1902, chapter 1093 of the United States Statutes for that year, appropriating certain receipts for the construction of irrigation works for reclamation of arid lands, in section 4 provides that in all constructive work eight hours shall constitute a day's work, and that *no Mongolian labor shall be employed thereon.* By chapter 3299 of United States Statutes of 1906, aliens are prohibited from fishing in the waters of Alaska.

United States Statutes also provide that only citizens or subjects of foreign states or nations may obtain copyrights in the United States, where such States or nations grant the same rights to our citizens. The same is practically the law with regard to aliens holding real estate in the territories in the United States, as well as in many of the States in the Union. In some of the States aliens are not allowed to acquire real estate.

My attention has been called to chapter 654 of the Laws of 1910, providing that only American citizens shall be licensed to operate moving picture shows, where it was practically conceded in the city of New York that the act was unconstitutional or in violation of treaty rights; but the

questions arising in that case differ from those now under consideration in that it was not an attempt on the part of the State to choose such persons as it might deem best adapted to its purpose to operate its property, but it was a general prohibition which covered the management and operation of private property, owned by individuals or corporations within the State. A law would undoubtedly be unconstitutional which compelled an individual, or a corporation already in existence, to employ persons other than those it chose to employ in the conduct of its business; and I think the holding of cases in the United States courts is to the effect that it is unconstitutional to prohibit private corporations in existence, or individuals, from employing any help that they may desire to employ, unless it is where they are conducting work for a State or a municipality; and the cases of Atkin v. Kansas, *supra,* and People ex rel. W. E. & C. Co. v. Metz, *supra,* I think clearly make this distinction, and hold that it is not unconstitutional for a State to determine the number of hours that shall constitute a day's work, or the persons that it shall employ in conducting its own affairs; and certain United States Statutes now in force, before referred to, recognize the right of Congress to prevent the employment of certain classes of people in the management of governmental business. The Act of May 28, 1896, chapter 255 of United States Statutes, also provides that all officers of vessels of the United States must be citizens of this country; and the law appears to be that, while a State or Congress may not legislate against any particular class of individuals, as to the general business they may pursue in this country, they may, as I have before said, in the conduct of their own business, provide that only certain classes of laborers shall be employed, without any violation of the Constitution or of treaty rights. No question is made by the district attorney in this case but that treaty rights are superior to laws that may be passed by any particular State; and that no State has any right to pass any law in violation of such treaty rights. I have had this in mind in the decision of this matter and have examined the extracts from the various treaties that have been presented to me, and I cannot see that the Labor Law of the

State of New York violates any of the treaty provisions with any of the different nations, inasmuch as it does not attempt to prohibit the employment of citizens of any nation by private corporations or individuals, and only declares its policy in the conduct of its own business affairs. It has legislated in favor of veterans of the Civil War for many years, giving them certain rights and privileges in working for the State and municipalities not accorded to other citizens, which it undoubtedly may do; and no question of the constitutionality of these acts has ever been raised so far as I know. To attempt to extend the same laws to employment by private corporations or individuals would undoubtedly be unconstitutional.

In the case of People v. Orange County Roads Cons. Co., 175 N. Y. 84, the court said: " It is urged that the work is a state work and that the legislature may prescribe rules for the manner in which it is to be performed. *As a general proposition this is doubtless true.* The state may prescribe regulations for the conduct of its employees. Those employees must comply with the mandates of the legislature. If in the case of a private person his foreman or manager should, in intentional violation of the master's command, exact more than eight hours' work a day from the men working under him, the master might discharge him even though his contract of employment was for a definite term.

" In the case of the state the employer being not only master but sovereign it may be that it could go further and make the violation of its mandates criminal. * * * Now, while as I have said, if the state itself prosecutes a work it may dictate every detail of the service required in its performance; prescribe the wages of workmen, their hours of labor and the particular individuals who may be employed, no such right exists where it has let out the performance of the work to a contractor unless it is reserved by the contract. The state in this respect stands the same as its citizens. Its rights are just as great as those of private citizens but no greater."

By an act of Congress passed March 2, 1897, chapter 361, section 1, it is provided that no person who is not a citizen of the United States, or who has not declared his intention to be-

come a citizen, shall acquire title to any land in any of the territories in the United States, provided that the prohibition should not apply to cases in which the right to hold or dispose of lands in the United States is secured by existing treaties.

By the act of March 3, 1887, chapter 340, section 2 (Suppl. U. S. Stat. 1024), it is provided that no corporation or association in which more than twenty per cent. of the stock was owned by persons who were not citizens of the United States should acquire or own any real estate in any of the territories of the United States or in the District of Columbia; and, by section 4 of the same act, it is provided that all property acquired or owned in violation of the provisions of the act should be forfeited to the United States. In State of Louisiana v. McNally, 36 L. R. A. 533, the city council of New Orleans enacted an ordinance providing that the service and employment of all laborers and mechanics employed by the city, or any contractor or subcontractor on any of the public works of the city, should be restricted to eight hours a day. The defendant was charged with violating this ordinance and convicted in a recorder's court. He appealed, attacking the legality and the constitutionality of the ordinance on the ground of violating the State Constitution and that, independently of that, the city had not the power to enact such an ordinance. Judge McAnery of the Supreme Court said: " This defense would, undoubtedly, be good if the ordinance applied to the regulating of the hours of work generally within the city limits. But the ordinance only regulates the hours of labor on city public works. The city has the absolute control of its own property and can regulate the hours of work to be employed on the same. The ordinance violates no law so far as it designates the number of hours in which labor may be employed on public works."

In Matter of Dalton, 61 Kan. 257, 47 L. R. A. 380, the question arose regarding the constitutionality of a law of the State providing that eight hours a day should constitute a day's work for all laborers, workmen, mechanics and other persons employed by or on behalf of the State, or by or on behalf of any county, city, township or other municipality

in the State. Dalton had been committed for violation of the statute against employing men more than eight hours per day on public works. Smith, J., said: " The law for a violation of which the petitioner is prosecuted is to be regarded as a direction by a principal to his agent, a matter of concern to the principal and agent alone. The State declares by this statute that all laborers, workmen or mechanics engaged in its service shall not work thereunder more than eight hours per day; that it will make no contracts for longer hours. A by-law for a corporation might provide that none of its agents should employ persons to labor in its behalf more than eight hours per day. Such by-law would be a matter of private concern between the corporation and the persons who sought employment by it. Here the state has seen fit to declare (and for what reason it is unnecessary to inquire) that eight hours shall constitute a day's work for all persons employed by it or by any of its political subdivisions."

He also states that a contractor, in bidding for work in the State, county, city, township, understands in making his estimate that eight hours is the limit for a day's work.

He also says: " The position which the state has taken in no wise differs from that of an individual who in the employment of labor refuses to permit his employees to labor more than eight hours. It is certainly lawful for one to refuse to employ men to work more than a given number of hours per day."

In the case of United States v. Martin, 94 U. S. 400, in passing upon an act of Congress declaring that eight hours shall constitute a day's work for laborers, workmen or mechanics employed by it or on behalf of the government of the United States, the court said: " We regard the statute chiefly as in the nature of a direction from a principal to his agent, that eight hours is deemed to be a proper length of time for a day's labor and that his contract shall be based upon that theory. It is a matter between the principal and his agent, in which a third party has no interest."

These cases, it is true, all or nearly all involve directly the right to limit the hours of labor, but the same reasoning applies in other matters, as when it comes to the right to pro-

vide what laborers shall be employed, giving a preference to veterans over civilians, preferring persons over or under certain ages to others, excluding Mongolians from governmental work, or preferring citizens to aliens on State or municipal work, and excluding aliens of countries which do not confer the same rights on our citizens from the right to hold real estate in the territories of the United States, and in various states of the Union.

No State can deprive any person of his right to acquire and hold property or to labor for others; but a State, like an individual, may determine whom *it* will employ in the construction of *its* public works and it is, like an individual, under no obligation to employ any class of laborers unless it desires so to do. The national government, while it may not pass a law that no Mongolians shall be employed in its boundaries, may decide *for itself* that no Mongolians shall be employed *on its* irrigation works for the reclamation of its arid land; and, while a State may not enact laws providing that eight hours shall constitute a day's work for any and all corporations, it may determine that, in the prosecution of all work *by and on behalf of the State,* eight hours shall constitute a day's work, and that only in case of certain emergencies shall laborers be allowed to work for a longer time in any day.

So it may not make it unlawful for all employers to employ unnaturalized foreigners, but it has the same right as an individual to refuse to employ them in the conduct of its own affairs. Conceding that a State has the same rights in conducting its business that an individual has, I cannot see that the State by an enactment of this law has exceeded its powers; and, if an individual or private corporation is not bound by any of the existing treaties to employ unnaturalized foreigners, I cannot see that the State is compelled so to do.

I can conceive excellent reasons why, on works of certain character, it might be much preferable to employ persons who had resided in the country long enough to become familiar with its language and methods of labor; but that is hardly pertinent to the decision of the question at issue.

The courts of our State have laid down certain rules in regard to the construction of statutes as regards their constitutionality, among which are the following: No statute should be declared unconstitutional if, by any reasonable construction, it can be given a meaning in harmony with the fundamental law. People v. Clark, 139 App. Div. 687. In People v. Ringe, 197 N. Y. 143, it was said that, where a statute admits of two constructions, one of which can be sustained as a proper exercise of legislative power, the one should be given which assumes that the Legislature was mindful of its constitutional limitations, and framed a constitutional and not an unconstitutional act; and, in Matter of City of New York, 140 App. Div. 238, it was said that the presumption in favor of the constitutionality of a statute must be clearly rebutted by the party claiming a violation of the Constitution in its enactment. Applying these rules, and in view of the foregoing decisions, as I construe them, I must overrule the demurrer. Questions were raised on the argument as to the constitutionality of other provisions of the act, and it was claimed that, if they were unconstitutional, the entire act was unconstitutional; but I do not think it necessary to go into an investigation of the constitutionality of the other portions of the act questioned on the argument, for this portion has no such connection with them as to be affected by their validity. Bohmer v. Haffen, 161 N. Y. 390. An order may be entered disallowing the demurrer, with liberty to the defendant to plead to the indictment.

Ordered accordingly.