In the Matter of the Application of VINCENT J. GIANATASIO, Petitioner, for a Peremptory Order of Mandamus against ABRAHAM KAPLAN and Others, Composing the Municipal Civil Service Commission of the City of New York, Respondents.*

Supreme Court, New York County, February 13, 1931.

---

* Affd., 257 N. Y. 531; affd., 284 U. S. ——; 76 L. Ed. 266.

*H. Eliot Kaplan,* for the petitioner.

*Arthur J. W. Hilly, Corporation Counsel [Cornelius Bregoff* and *Arthur Sweeny* of counsel], for the respondents.

*Gross & Keck [Frederick W. Keck* of counsel], for intervenor Hennessy.

*Joseph Conroy,* for American Legion (*amicus curiæ*).

CALLAHAN, J. It was stipulated on the argument of the motion for mandamus herein that the sole question involved was whether or not the amendment to article 5, section 6, of our State Constitution, approved by the People at the general election of November 5, 1929, and the legislation adopted pursuant thereto (Laws of 1930, chap. 374, amdg. Civil Service Law, § 21), which amendment and statute provide preference in civil service to disabled war veterans, violate section 1 of the Fourteenth Amendment of the United States Constitution.

The precise claim of the petitioner is that the new veterans preference laws abridge the privileges of citizens of the United States and deny to them the equal protection of the laws because they grant preference only to those disabled veterans who were citizens and residents of this State at the time of their entrance into the military and naval service of the United States.

The question is clarified when we consider that entry into civil service is a privilege rather than a right. It is well established that employment by the State may be made dependent upon citizenship (*People* v. *Crane,* 214 N. Y. 154; *Atkin* v. *Kansas,* 191 U. S. 207; *Heim* v. *McCall,* 239 id. 175), or upon residence in the State (*Blake* v. *McClung,* 172 U. S. 239, 256). (See, also, *Ownbey* v. *Morgan,* 256 id. 94, 109.) While there is a dearth of authority on the precise question it appears that at least where proper conditional support exists the State may provide for preference in civil service on the basis of service to the country in time of war. (*Matter of Keymer,* 148 N. Y. 219; *Matter of Barthelmess* v. *Cukor,* 231 id. 435; *People ex rel. Kenny* v. *Folks,* 89 App. Div. 171; *Matter of Opinion of Justices,* 166 Mass. 589.) As the State has the right to discriminate in favor of citizens against aliens or in favor of residents against non-residents in public employment and to reward patriotic service by preferring veterans over non-veterans, the question involved herein is whether or not it may combine these so as to provide that only war veterans who were citizens and residents of the State at the time of their entrance into the military service may receive preference.

*Atkin* v. *Kansas* (*supra*) and *Heim* v. *McCall* (*supra*) upheld

the right of the State to limit employment on public work to citizens of the State on the ground that such employment was a privilege rather than a right and that the State as an employer had the power to prescribe the conditions upon which it will permit public work to be done by contractors paid with State funds or the funds of municipalities. These cases held that the courts did not have authority to review legislative action in that respect as the regulations on this subject suggest only questions of public policy and with such considerations the judicial branch had no concern.

The extent to which the Supreme Court intended by its decision in *Heim* v. *McCall* to affirm the right of the State to discriminate in selecting its employees is not clear. The opinion of the court consists largely of an analogy between the questions therein involved and those before the court in *Atkin* v. *Kansas*. The principles enunciated in the latter decision were held controlling. On first reading, *Atkin* v. *Kansas* would appear to hold that as an employer the State can select whom it likes without restriction of any nature. It is so interpreted by some text writers and reviewers. (See Burdick Law of American Constitution, § 277; 1 Cornell Law Quarterly, 175; 28 Harv. Law Review, 498; 14 Mich. Law Review, 246.) Others indicate that the right of selection is not so broad but is subject to the general limitation that the State cannot violate other express constitutional provisions to provide by law arbitrary or unreasonable discriminations that would deprive its citizens of equal protection of the law. (Willoughby Const. [2d ed.] § 127; 4 Cal. Law Review, 405.)

That the Supreme Court did not intend to hold that no question of abridgement of the privileges of citizens or of the equal protection of the laws could arise concerning the subject of employment by the State is quite certain. Upholding the right of the State to regulate hours of employment on public works (*Atkin* v. *Kansas*), or approving the right of the State to confine public work to citizens (*Heim* v. *McCall*), does not necessarily determine the right of the State to discriminate between citizens as to appointment or advancement in public employment solely on the basis of the citizen's status at a particular period in the past.

That the question of constitutional infringement might arise concerning employment by the State is suggested by a consideration of the following quotations from the decision of our Court of Appeals in the case of *People* v. *Crane* (*supra*), a companion case to *Heim* v. *McCall*, and involving the same questions:

In the *Crane* case (at p. 168) the Court of Appeals in the opinion rendered by CARDOZO, J., in which a majority of the court concurred, said: " It is true that the individual, though a citizen, has no legal right in any particular instance to be selected as contractor

by the government. It does not follow, however, that he may be declared *disqualified* from service, unless the proscription bears some relation to the advancement of the public welfare. (*Strauder* v. *West Virginia, supra,* [100 U. S. 303] at page 305.) The legislature has unquestionably the widest latitude of judgment in determining whether such a relation exists, but we are not required to hold that there is no remedy against sheer oppression. Where the line must be drawn, we do not now determine."

SEABURY, J., in a concurring opinion in the same case, stated that the Fourteenth Federal amendment had no application to the exclusion of aliens working upon public works, holding that such discrimination was proper under the " police power " of the State but adding, however, that such power did not give the right to discriminate on account of race or religion as such grounds sustain no relation to the general public welfare.

WILLARD BARTLETT, Ch. J., in a further concurring opinion in the same case (at p. 175) said, however: " I can find no reason to suppose, however, that the Fourteenth Amendment was designed to limit or restrict the rights of a state as an employer of labor. Other employers, individual or corporate, possess the undoubted and absolute right to withhold employment from whomever they see fit. The Constitution could hardly have been intended to deprive the states of equality with private employers in this respect," and at page 176 the same judge stated: " If the alien labor law under consideration is violative of the Fourteenth Amendment, the preference given to veterans by the Constitution of the state of New York must likewise be invalid. (Const. of New York, art. V, sec. 9.) Appointments and promotions in the civil service of the state and of all civil divisions thereof, including cities and villages, are thereby required to be made according to merit and fitness to be ascertained as far as practicable by examinations, which so far as practicable shall be competitive; ' provided, however, that honorably discharged soldiers and sailors from the army and navy of the United States in the late civil war, who are citizens and residents of this state, shall be entitled to preference in appointment and promotion, without regard to their standing on any list from which such appointment or promotion may be made.' Here is a preference in the public service based wholly upon a status acquired half a century ago, and a preference of one class of citizens over all others. There could not be a clearer case of discrimination. I think that the Federal Constitution permits such discrimination but I should not think so if it be held that the statute in question here is in conflict with the Fourteenth Amendment."

It must be clear that by its decision in *Heim* v. *McCall* the

Supreme Court did not intend to hold that the State as an employer might commit a clear violation of the express constitutional restrictions such as the inhibition against discrimination on the grounds of race or color and the guaranty of equal protection of the laws.

The question then remains whether the present discrimination violates any right guaranteed by the Fourteenth Amendment.

Not all discrimination is prohibited by the guaranties of equal protection of the law or that against abridgement of privileges of citizens. The test to be applied is whether the discrimination is arbitrary or unreasonable or whether it is based on some ground which may have appeared to the Legislature as having some relation to the subject of the legislation (*Gulf, Colorado & Santa Fe R. R.* v. *Ellis*, 165 U. S. 150); some basis which may have appealed to the Legislature of the State as having some relation to the advancement of the public welfare. (*People* v. *Crane, supra.*)

The courts may not upset the legislative classification because judges doubt its wisdom or disagree with the soundness of the legislative reasoning.

As was said in *Atkin* v. *Kansas* (at p. 223): " So, also, if it be said that a statute like the one before us is mischievous in its tendencies, the answer is that the responsibility therefor rests upon legislators, not upon the courts. No evils arising from such legislation could be more far-reaching than those that might come to our system of government if the judiciary, abandoning the sphere assigned to it by the fundamental law, should enter the domain of legislation, and upon grounds merely of justice or reason or wisdom annul statutes that had received the sanction of the people's representatives. We are reminded by counsel that it is the solemn duty of the courts in cases before them to guard the constitutional rights of the citizen against merely arbitrary power. That is unquestionably true. But it is equally true — indeed, the public interests imperatively demand — that legislative enactments should be recognized and enforced by the courts as embodying the will of the people, unless they are plainly and palpably, beyond all question, in violation of the fundamental law of the Constitution."

Can, then, the present discrimination be said to be based on any reason relating to the subject of the legislation or within the purview of legislative decision based on its view of the advancement of public welfare or must it be said to violate the fundamental constitutional rights?

It is evident that the restriction of the preference to those disabled veterans who were residents and citizens of the State when they entered the military or naval service was for the purpose of limiting

the number of veterans who might obtain the benefits thereof. If the Legislature can say that citizenship at the time of hiring has some relation to the right of employment on public work or that military service rendered in the past has proper relation to civil preferment, why may it not say that citizenship of and residence in the State at the time of past military service has relation to preference in civil service? The patriotic citizen of to-day whose age or other fortuitous circumstance prevented him from offering his services in a past war would be discriminated against even if the class preferred included all veterans, citizen and alien, able or disabled. The veteran who received or claimed no disabling injury in war is discriminated against in favor of one who did. No attack is made on the statute on these grounds. While it might well be said that we owe a greater debt to the alien who entered the service of this country than to a citizen who did likewise, on the other hand, those who were aliens when the late war was on were under different restrictions with respect to military service than were citizens and among aliens the requirements varied according to the relation between our government and the country of origin. As to those who were citizens of the United States but residents of other States at the time of entering service the Legislature or the people might well determine that they should not receive the benefits of preference in the employment of this State on the mere circumstance that they acquired residence in this State after they entered the service or perhaps because they may have come here after the adoption of the law granting preference and for the purpose of taking advantage of it. The court is not advocating the wisdom of the legislative reasoning. It is only attempting to indicate that this amendment with its discrimination might have been based on reason and not merely on whim or caprice, that its classification was not necessarily exercised arbitrarily but might have some relation to the legislation involved. A court can go no further. It is enough that the law does not preclude the *possibility* of a rational basis for the legislative judgment. (*Clarke* v. *Deckebach*, 274 U. S. 392.)

It cannot be said that the provisions of law under consideration preclude such possibility or clearly violate the limitations of the Federal Constitution by abridging privileges or denying equal protection of the laws as such terms have been judicially interpreted. Of course, the fact that the provision for this preference has been ratified by popular vote strengthens the effect to be given it. Therefore, the petition for mandamus is denied. Order signed.