Bolivar ANDRADE, Plaintiff,

v.

S. Michael NADEL, New York City Personnel Director, Charles R. Foy, Jr., Deputy New York City Personnel Director, Harold L. Fisher, Chairman, New York City Transit Authority, Defendants.

No. 79 Civ. 3552–CLB.

United States District Court,
S. D. New York.

Oct. 15, 1979.

New York Civil Liberties Union by Steven R. Shapiro, New York City, for plaintiff Andrade.

Allen G. Schwartz, Corp. Counsel of the City of New York, for defendants Nadel and Foy, by David D. Drueding, Marilyn Richter, New York City.

Helen R. Cassidy, Gen. Counsel, New York City Transit Authority, New York City, for defendant Fisher.

Robert Abrams, Atty. Gen., State of New York, for intervenor, by Robert S. Hammer, Asst. Atty. Gen., New York City.

## MEMORANDUM AND ORDER

BRIEANT, District Judge.

By his complaint filed July 10, 1979 pursuant to 42 U.S.C. § 1983, plaintiff Bolivar Andrade challenges the constitutionality, as applied to him, of New York Civil Service Law § 85(I)(a) and the provisions of Article V, § 6 of the New York State Constitution, which together condition upon American citizenship eligibility for a veteran's preference for appointments pursuant to competitive examination in the New York State classified civil service.

Defendants Nadel and Foy are New York City officials charged with the administration of the New York Civil Service law with respect to municipal employment by the New York City Transit Authority. The action has been discontinued without prejudice as to defendant Harold L. Fisher. The Attorney General of the State of New York has been permitted to intervene and has filed a responsive pleading. Plaintiff seeks summary judgment pursuant to Rule 56, F.R.Civ.P.

The facts are not in dispute. Plaintiff is a native of Ecuador, who entered the United States prior to his 14th birthday, and has resided in the United States and in the State of New York from about 1956 to the present time. He is a lawful permanent resident alien.

On or about September 25, 1967, while a resident of New York State, plaintiff enlisted in the United States Army. He served in Viet Nam for thirteen (13) months and received six service medals: National Defense Service Medal, The Viet Nam Service Medal, The Viet Nam Campaign Medal, The Combat Infantryman's Badge, The Army Commendation Medal, and The Bronze Star. Returning to New York following his honorable discharge, Andrade took the civil service competitive examination for a Railroad Clerk, and through some unexplained administrative oversight, was awarded the 5 point added Veterans Preference Bonus to his test score. As a non-citizen, he was not entitled to this preference, under a literal reading of the statute and state constitution quoted below. As a result of his 5 point added Veterans Preference Bonus, he received a test score and list number which brought him a probationary appointment on or about November 13, 1978 as a Railroad Clerk for the Metropolitan Transit Authority. He has performed satisfactory work since his appointment, but on June 10, 1979 received a letter from the defendant Deputy New York City Personnel Director, informing him that he was to be terminated on July 13, 1979, solely for the reason that he was "not a citizen of the United States at the time of [Civil Service] list establish-

ment," and therefore was ineligible to receive a veteran's preference. Except for the requirement of citizenship, plaintiff is otherwise entitled to a veteran's preference. At the request of the Court, the parties stipulated that plaintiff would be allowed to retain his job pending resolution of this litigation.

The relevant constitutional provision and statutory enactment read as follows:

New York State Constitution, Article 5, § 6.

". . . veterans' preference . . . [A]ny member of the armed forces of the United States who served therein in time of war, who is a *citizen* and resident of this state and was a resident at the time of his entrance into the armed forces of the United States and was honorably discharged or released under honorable circumstances from such service, shall be entitled to receive five points additional credit in a competitive examination for original appointment . . . . Such additional credit shall be added to the final earned rating of such member after he has qualified in an examination and shall be granted only at the time of establishment of an eligible list." [Emphasis added].

New York Civil Service Law, § 85.

"Additional credit allowed veterans in competitive examinations . . .

1. Definitions. (a) The terms 'veteran' and 'non-disabled veteran' mean a member of the armed forces of the United States who served therein in time of war, who was honorably discharged or released under honorable circumstances from such service, who was a resident of this state at the time of entrance into the armed forces of the United States and who is a *citizen* and resident thereof at the time of application for appointment or promotion or at the time of retention, as the case may be." [Emphasis added].

No claim is made here that citizenship is required for appointment as a Railroad Clerk in the classified service. Indeed, if plaintiff had scored five points higher on the examination, he would have been hired without the veteran's preference, and defendants would not have sought to fire him.

The sole issue in this litigation is whether aliens, lawfully resident, who are veterans and who were residents of the State of New York at the time they entered United States military service, may be excluded from the benefits of veterans' preference points awarded to citizens similarly situated.

█ The general standard under the Fourteenth Amendment to the United States Constitution for review of state laws abridging the rights of aliens is that of strict judicial scrutiny, as such classifications discriminating against aliens are inherently suspect. See, *Graham v. Richardson*, 403 U.S. 365, 91 S.Ct. 1848, 29 L.Ed.2d 534 (1970); *Nyquist v. Mauclet*, 432 U.S. 1, 97 S.Ct. 2120, 53 L.Ed.2d 63 (1977), and cases cited therein. However, a state can require United States citizenship as a qualification for certain public positions that involve ". . . discretionary decision making, or execution of policy . . .." *Foley v. Connelie*, 435 U.S. 291, 296, 98 S.Ct. 1067, 1071, 55 L.Ed.2d 287 (1978); *accord, Ambach v. Norwick*, 441 U.S. 68, 99 S.Ct. 1589, 60 L.Ed.2d 49 (1979). To promote this principle, the Supreme Court held that where a state law excluded aliens from governmental positions requiring the formulation and execution of policy, the state need prove only that its limiting classification bore a rational relationship to the state interest sought to be protected. *Foley v. Connelie, supra*; *Ambach v. Norwick, supra*. While this exception to the strict judicial scrutiny standard lessens the state's burden to justify its discrimination, it cannot be satisfied in this case. The veterans' preference statute affects a broad range of public employment, including the railroad clerk job held by plaintiff. That position, and most if not all civil service positions filled by competitive examination, cannot be said to involve the formulation and execution of state policy. As the rationale behind the exception is inapplicable here, the general standard of review requiring strict judicial scrutiny will be applied.

On such review, the burden is upon the state to justify its discrimination against this suspect class by demonstrating a constitutionally permissible and substantial purpose, *and* that the discrimination is necessary to accomplish this purpose. *Examining Board v. Flores de Otero,* 426 U.S. 572, 605, 96 S.Ct. 2624, 49 L.Ed.2d 65 (1976). The statute granting veterans benefit in civil service examinations limits the award of additional points to New York *residents,* who were such at the time of entry into service. No legitimate and substantial interest of the state can be articulated which excludes from such a benefitted group, lawful *aliens* who entered the military service while residents of the State. The veterans hiring preference has been justified as a measure designed to reward veterans for the sacrifice of military service, to ease their transition from military to civilian life, to encourage patriotic conduct and to attract loyal and well-disciplined people to civil service employment. See, *Personnel Administrator of Massachusetts v. Feeney,* —— U.S. ——, ——, 99 S.Ct. 2282, 60 L.Ed.2d 870 (1979). The civil service preference for veterans has a long and distinguished history in New York, initiated as an absolute preference in favor of those who served in the Union Army. Having risked his life in combat for this country, Andrade, as a resident alien, is as much entitled to this benefit as a resident citizen would be. See also, *August v. Bronstein,* 369 F.Supp. 190, 193 (S.D.N.Y. Three-Judge Court), *aff'd.,* 417 U.S. 901, 94 S.Ct. 2596, 41 L.Ed.2d 208 (1974).

Our attention has been directed to the prior decision of *Gianatasio v. Kaplan,* 142 Misc. 611, 255 N.Y.S. 102 (Sup.Ct.N.Y.Co.), *aff'd.* 257 N.Y. 531, 178 N.E. 782 (1931), *appeal dismissed* 284 U.S. 595, 52 S.Ct. 203, 76 L.Ed. 512 (1932). This case upholds the constitutionality of the statute here applied, relying on such cases as *Heim v. McCall,* 239 U.S. 175, 36 S.Ct. 78, 60 L.Ed. 206 (1915) and *Crane v. New York,* 239 U.S. 195, 36 S.Ct. 85, 60 L.Ed. 218 (1915) for the proposition that a State may exclude non-citizens from public employment, such employment being regarded in those times, as a privilege rather than a right. However, this theory has been rejected by later learning in the Supreme Court, and the state can no longer justify the exclusion of aliens from all levels of public employment. *Sugarman v. Dougall,* 413 U.S. 634, 93 S.Ct. 2842, 37 L.Ed.2d 853 (1973).

The Court concludes that the constitutional provision and statute are unconstitutional as applied to plaintiff, and violate his right of equal protection under the Fourteenth Amendment to the United States Constitution by reason of their underinclusion.

The question is then presented: what remedy is to be extended to Mr. Andrade? In a concurring opinion in *Welsh v. United States,* 398 U.S. 333, 361, 90 S.Ct. 1792, 1807–1808, 26 L.Ed.2d 308 (1971) Justice Harlan wrote:

"Where a statute is defective because of underinclusion there exists two remedial alternatives: a court may either declare it a nullity and order that its benefits not extend to the class that the legislature intended to benefit, or it may extend the coverage of the statute to include those whose are aggrieved by exclusion."

Justice Harlan advised that in choosing between these alternatives a court should consider

"Whether it more nearly accords with [the Legislature's] wishes to eliminate the policy altogether or extend it to render what [the Legislature] plainly did intend, constitutional." *Id.* at 355–56, 90 S.Ct. at 1804.

Relevant to this inquiry is the depth of the Legislature's commitment to the underlying policy of the statute, and the amount of disruption to the statutory scheme which might accompany either extension or invalidation. *Id.* at 365, 90 S.Ct. 1792.

In *Califano v. Westcott,* —— U.S. ——, 99 S.Ct. 2655, 61 L.Ed.2d 382 (1979), dealing with a federal provision unlawful by reason of underinclusion, the Court held that "extension, rather than nullification, is the proper course." *Id.* at ——, 99 S.Ct. at 2663. The defendants show (Affidavit of

Charles R. Foy, Jr., filed October 3, 1979) that "on most civil service examinations, there is a pronounced 'bunching' (*i. e.*, a large percentage of the test takers obtain very similar scores) [and] it can be assumed that rescission of the five or 10 point veterans' preference in the case of most of 1,300 employee [veterans receiving probationary appointments in New York City alone during the past year will] result in their receiving a list number that has not yet been reached for appointment, and that consequently they will lose their jobs." Mr. Foy points out that Mr. Andrade, with five points veteran's credit, was number 3,556 on the railroad clerk list. Without his veteran's preference, Mr. Andrade would drop to number 9,145 on the list, a number which has not yet been reached, and very likely will not be reached before the expiration of the life of the list. There is also the possibility that tenured employees in a large, but indefinite number, might find their appointments subject to collateral attack in the state courts, where they achieved tenure after a year of satisfactory service upon an appointment based on veteran credits. Accordingly, the City defendants request that "in the event the Court holds that the statute's citizenship requirement is unconstitutional, that the Court excise that portion of the statute, and leave the remainder of the veterans' preference in full force and effect."

There can be no doubt about the strength and depth of New York's commitment to a veterans' preference policy. This is demonstrated by more than a century of granting such preferences and by the fact that this provision has been frozen into the State Constitution itself. A determination that the entire veterans' preference policy is void would be unreasonable, and might have sudden and highly adverse effects on the New York State Civil Service System as noted above.

■ The Court determines that the provision of the New York State Constitution and the statute above cited are unconstitutional as underinclusive in violation of the Fourteenth Amendment of the United States Constitution, when read and applied to exclude lawfully admitted aliens who entered United States military service while resident in New York and were honorably discharged.

■ A proper response on the part of this Court to the patent present unconstitutionality of the statute and New York State constitutional provision adverted to herein is to extend veterans' preferences to otherwise qualified lawfully resident · aliens. While there are no severability clauses, no necessity therefor could have been anticipated in 1949 when the State Constitution was revised to include the provision.

The motion for summary judgment is granted. Settle a proposed final judgment on fifteen (15) days notice, which shall grant declaratory and injunctive relief consistent with this Memorandum and Order. If legal fees are claimed in behalf of plaintiff, an affidavit describing with sufficient particularity the services rendered and the hours devoted thereto shall be served and filed together with the proposed judgment.

So ordered.