755 F.2d 266
 53 USLW 2438
 Eduardo SOTO-LOPEZ and Eliezer Baez-Hernandez, Plaintiffs-Appellants,
v.
NEW YORK CITY CIVIL SERVICE COMMISSION; New York City
Department of Personnel; Mark Lebow, individually and as
Chairman of the New York City Civil Service Commission; and
Juan Ortiz, individually and as Director of the New York
City Department of Personnel, Defendants-Appellees,
The Attorney General of the State of New York,
Defendant-Intervenor-Appellee.
 No. 38, Docket 84-7325.
 United States Court of Appeals,
Second Circuit.
 Argued Sept. 19, 1984.
Decided Feb. 15, 1985.
 
 Robert L. Becker, New York City (Jorge Batista, Puerto Rican Legal Defense & Educ. Fund, Inc., New York City, on the brief), for plaintiffs-appellants.
 Robert Abrams, Atty. Gen., State of N.Y., New York City (Brenda S. Spears, Frederick Mehlman, Asst. Attys. Gen., New York City, of counsel), submitted a brief for defendant-intervenor-appellee.
 Frederick A.O. Schwarz, Jr., Corp. Counsel of the City of New York, New York City (Gillian Sacks, New York City, of counsel), for defendants-appellees, joined the brief of defendant-intervenor-appellee.
 Before OAKES, KEARSE and PRATT, Circuit Judges.
 KEARSE, Circuit Judge:
 
 
 1
 The State of New York (the "State"), through article V, Sec. 6, of its Constitution and Sec. 85 of its Civil Service Law, provides that a New York resident who passes a civil service examination, who is a veteran of the United States armed forces, and who meets certain other criteria will have points added to his score if he was a resident of New York at the time he entered the armed forces. Plaintiffs Eduardo Soto-Lopez and Eliezer Baez-Hernandez, veterans residing in New York who claim to have met all of the criteria of those provisions except that of New York residence at the time of their entrance into the armed forces, appeal from a final judgment of the United States District Court for the Southern District of New York, Richard Owen, Judge, granting the motion of defendants New York Civil Service Commission, et al., to dismiss their complaint, brought under 42 U.S.C. Sec. 1983 (1982), challenging the past-residency requirement of the New York provisions as violative of their right to equal protection under the Fourteenth Amendment to the United States Constitution and of their constitutionally protected right to travel. Relying on August v. Bronstein, 369 F.Supp. 190 (S.D.N.Y.) (three-judge court), aff'd mem., 417 U.S. 901, 94 S.Ct. 2596, 41 L.Ed.2d 208 (1974), which decided the very questions at issue here, the district court held that the New York provisions infringed neither constitutional right. Plaintiffs contend that August v. Bronstein was implicitly overruled by Zobel v. Williams, 457 U.S. 55, 102 S.Ct. 2309, 72 L.Ed.2d 672 (1982), and that Zobel requires that the past-residency requirement of the New York provisions be invalidated as both a denial of equal protection and a burden on the right to travel because the practice is not rationally related to a legitimate or compelling state purpose. We agree and therefore reverse the judgment of the district court and remand for further proceedings.
 
 I. BACKGROUND
 A. Facts
 
 2
 For purposes of the present appeal, the facts do not appear to be in substantial dispute. Both Soto-Lopez and Baez-Hernandez are American citizens born in Puerto Rico; each resided in Puerto Rico at the time of his induction into the United States Army. Baez-Hernandez entered the army in 1958 and served on active duty until 1960. He became a resident of New York State in 1968 and has resided in New York continuously since that time. In 1970 he was recalled to active duty for 15 days, during which he suffered an injury that left him partly disabled. Baez-Hernandez was honorably discharged after both periods of active duty.
 
 
 3
 In 1980, Baez-Hernandez took the New York City ("NYC") Civil Service competitive examination for the position of Human Resources Specialist and received a score of 77.3. In response to his claim that he was a disabled veteran, Baez-Hernandez was preliminarily awarded 10 additional points--5 for veteran status, and 5 for his service-related disability--thereby raising his score to 87.3. Based on the adjusted score, Baez-Hernandez received an appointment as a Human Resources Specialist on about June 1, 1981. The award of the 10 bonus points was rescinded two days later, however, and the appointment withdrawn, when it was discovered that Baez-Hernandez was not a New York resident at the time of his entry into the army.
 
 
 4
 In 1981, Baez-Hernandez took NYC Civil Service competitive examinations for the positions of O.C. Research Assistant and Assistant Accountant, with similar results. In each case, he was preliminarily awarded 10 additional points based on his claim that he was a disabled veteran; in each case the award was rescinded upon the discovery that he was not a New York resident when he entered the army. The cancellation of the 10-point bonus led to Baez-Hernandez's name being placed substantially lower on the eligibility lists compiled from the examinations. Apparently, Baez-Hernandez eventually received an appointment to a civil service position from one of these lists. However, he contends that his appointment was substantially delayed, with a concomitant loss of wages and seniority, due to defendants' refusal to grant him the 10 veteran preference points he claimed.
 
 
 5
 Soto-Lopez entered the army in 1961 and was honorably discharged from active duty in 1963. He became a resident of New York in 1965. In 1980, he took the NYC Civil Service competitive examination for the position of Housing Caretaker, receiving a score of 88. Based on his claim to veteran status he was provisionally granted 5 additional points, thereby raising his score to 93. In December 1982, Soto-Lopez was called for interviews for a Housing Caretaker position. However, upon the discovery that he was not a New York resident at the time of his entry into the army, the 5 bonus points were cancelled, his name was accordingly placed significantly lower on the eligibility list, and he was no longer considered for the position. At the time this appeal was argued, Soto-Lopez had not been appointed to a civil service position.
 
 B. The Proceedings Below
 
 6
 Plaintiffs' complaint, brought under 42 U.S.C. Sec. 1983, recited the above facts and claimed that the application of N.Y. Const. art. V, Sec. 6, and N.Y.Civ.Serv.Law Sec. 85(1)(a) (McKinney 1983) to deny them the additional points accorded to those New York resident veterans who were New York residents at the time they entered the armed forces violated the Equal Protection Clause of the Fourteenth Amendment and the constitutionally protected right to travel. They sought declaratory and injunctive relief and retroactive employment benefits.[1]
 
 
 7
 After a number of procedural steps eventually culminating in the intervention by the Attorney General of the State of New York as a defendant, plaintiffs moved for summary judgment granting the relief requested in their complaint, and defendants cross-moved for summary judgment in their favor. In support of their motion, plaintiffs pointed out that the challenged provisions created a distinction between two classes of New York resident veterans, i.e., those veterans who were residents of the state at the time they entered the armed forces and those veterans who were not, with only the former class entitled to veteran preference points. Plaintiffs argued (1) that this distinction was not rationally related to a legitimate state purpose and therefore violated the Equal Protection Clause; and (2) that the effect of the provisions was to give certain long-term residents priority over newer residents, without any compelling state interest in such a priority, and thus to burden impermissibly the constitutionally protected right to travel. Plaintiffs urged the court to rule that August v. Bronstein, which had upheld the New York distinction as a modest token of gratitude to residents of the State for their past contributions to the State in time of war, had been implicitly overruled by Zobel v. Williams, which plaintiffs construe as holding that " 'reward[ing] citizens for past contributions ... [is an] objective [that] is not a legitimate state purpose.' " (Plaintiffs' brief on appeal at 6 (quoting Zobel v. Williams, 457 U.S. at 63, 102 S.Ct. at 2314).)
 
 
 8
 After receiving arguments from both sides as to the continuing vitality of August and the legitimacy of New York's purposes in maintaining the challenged distinction, the district court rejected the contention that August v. Bronstein had been overruled by Zobel v. Williams. The court held, following August, "that it is neither an infringement on the rights of a resident of another state to travel, nor of equal protection of the laws for New York to promise to its own sons and daughters departing for wartime service in the armed forces that upon their honorable return, they are entitled to a modest civil service hiring advantage." Accordingly, it granted defendants' motion to dismiss the complaint.
 
 
 9
 This appeal followed.
 
 II. DISCUSSION
 
 10
 On appeal, plaintiffs renew the constitutional challenges they made in the district court. For the reasons below, we find merit in both the equal protection and the right-to-travel arguments and accordingly reverse the judgment dismissing the complaint. We remand to the district court for the granting of declaratory and injunctive relief and for further proceedings on other issues relating to plaintiffs' claims for individual relief.
 
 A. The Statutory Scheme
 
 11
 Article V, section 6, of the New York State Constitution provides that:
 
 
 12
 [a]ppointments and promotions in the civil service of the state and all of the civil divisions thereof, including cities and villages, shall be made according to merit and fitness to be ascertained, as far as practicable, by examination which, as far as practicable, shall be competitive; provided, however, that any member of the armed forces of the United States who served therein in time of war, who is a citizen and resident of this state and was a resident at the time of his entrance into the armed forces of the United States and was honorably discharged or released under honorable circumstances from such service, shall be entitled to receive five points additional credit in a competitive examination for original appointment and two and one-half points additional credit in an examination for promotion or, if such member was disabled in the actual performance of duty in any war, is receiving disability payments therefor from the United States veterans administration, and his disability is certified by such administration to be in existence at the time of his application for appointment or promotion, he shall be entitled to receive ten points additional credit in a competitive examination for original appointment and five points additional credit in an examination for promotion. Such additional credit shall be added to the final earned rating of such member after he has qualified in an examination and shall be granted only at the time of establishment of an eligible list. No such member shall receive the additional credit granted by this section after he has received one appointment, either original entrance or promotion, from an eligible list on which he was allowed the additional credit granted by this section.
 
 
 13
 (Emphasis added.)
 
 
 14
 Section 85(1)(a) of the New York Civil Service Law, implementing this constitutional provision, defines a veteran as
 
 
 15
 a member of the armed forces of the United States who served therein in time of war, who was honorably discharged or released under honorable circumstances from such service, who was a resident of this state at the time of entrance into the armed forces of the United States and who is a citizen of the United States or an alien lawfully admitted for permanent residence in the United States at the time of application for appointment or promotion ... as the case may be.
 
 
 16
 (Emphasis added.) Section 85(2)(a) provides, inter alia, that disabled veterans shall receive 10 additional points on civil service competitive examinations for original appointment and 5 additional points on civil service competitive examinations for promotion, and that nondisabled veterans shall receive 5 and 2 1/2 additional points respectively on such examinations.
 
 
 17
 No question has been raised as to plaintiffs' satisfaction of all of the requirements of Sec. 85 other than the requirement that they have been residents of New York at the time of their entrance into the armed services.
 
 B. August v. Bronstein
 
 18
 August v. Bronstein, 369 F.Supp. 190, is apparently on all fours with the present case.[2] The August plaintiffs were veterans who were then residents of New York but who had not been residents of New York when they entered the armed services. They met all of the other requirements of Sec. 85 of the Civil Service Law, and they challenged the provisions of that law and of the New York Constitution that awarded veteran preference points only to those veterans who had been residents of New York at the time they entered the armed services, contending that those provisions violated their right to equal protection and their constitutional right to travel.
 
 
 19
 The three-judge court convened to rule on these constitutional challenges upheld the New York provisions, finding that they violated neither the Equal Protection Clause nor the right to travel. The court stated that " 'the test for application of the Equal Protection Clause is whether the legislative classification is in fact substantially related to the object of the statute.' " 369 F.Supp. at 193 (quoting Boraas v. Village of Belle Terre, 476 F.2d 806, 814 (2d Cir.1973) (emphasis in original), rev'd, 416 U.S. 1, 94 S.Ct. 1536, 39 L.Ed.2d 797 (1974)). After tracing the history of the veteran preference in New York, the August court stated that the purposes of the classification was "apparent":
 
 
 20
 The preference is a token of gratitude conferred by New York upon its sons who enter their country's service in time of war, and perhaps an encouragement to return to the service of the State thereafter.
 
 
 21
 369 F.Supp. at 193. The court concluded that "the modest veterans' preference at issue here is substantially related to the purposes of the State." Id.
 
 
 22
 In reaching that conclusion, the August court relied principally on Russell v. Hodges, 470 F.2d 212 (2d Cir.1972), which had upheld, in the face of an equal protection challenge, a New York statute that provided that an employee who was a wartime veteran would be granted a pretermination hearing before being fired from a civil service position while a peacetime veteran would not.[3] Russell, which did not involve the veteran's residence, reasoned that the State could rationally base the distinction challenged there on the premise that services performed and hardships undergone by servicemen in wartime were greater than those performed and undergone by servicemen in peacetime.
 
 
 23
 The August court distinguished Carter v. Gallagher, 337 F.Supp. 626 (D.Minn.1971), and Stevens v. Campbell, 332 F.Supp. 102 (D.Mass.1971) (three-judge court), both of which had struck down residency classifications in state civil service veteran preference statutes, and Shapiro v. Thompson, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969), and Dunn v. Blumstein, 405 U.S. 330, 92 S.Ct. 995, 31 L.Ed.2d 274 (1972), which had struck down one-year residency requirements for welfare and voting respectively, on the ground that the classifications in those cases were based on durational residency requirements. The court pointed out that the New York scheme was different because the New York classification was not based on duration of residency but "require[d] only that the veteran be a resident at the time of induction and a resident and citizen at the time he claims the preference." 369 F.Supp. at 194 (emphasis in original). The court also distinguished Stevens on the ground that the preferences accorded veterans in that case were "substantially greater." Id. at 194-95.
 
 
 24
 Finally, the court concluded that the preference granted under the New York laws was too limited to be held realistically to infringe or penalize the right to travel. In so ruling, the court noted the then-recent summary affirmances by the Supreme Court in Sturgis v. Washington, 414 U.S. 1057, 94 S.Ct. 563, 38 L.Ed.2d 464 (1973), aff'g 368 F.Supp. 38 (W.D.Wash.1973) (three-judge court), upholding a state statute authorizing lower state college tuition for students who had been bona fide residents of the state for other than educational purposes for one year prior to registration in the state school, and Spatt v. New York, 414 U.S. 1058, 94 S.Ct. 563, 38 L.Ed.2d 465 (1973), aff'g 361 F.Supp. 1048 (E.D.N.Y.1973) (three-judge court), upholding a statute that restricted eligibility for state scholarship assistance to students enrolled in an approved institution within the state.
 
 
 25
 The August plaintiffs appealed directly to the Supreme Court, pursuing their contentions that the New York provisions denied them equal protection and violated their right to travel. The Supreme Court summarily affirmed.
 
 
 26
 The summary affirmance of August by the Supreme Court constituted a decision on the merits of that case. See, e.g., Hicks v. Miranda, 422 U.S. 332, 344, 95 S.Ct. 2281, 2289, 45 L.Ed.2d 223 (1975); Ohio ex rel. Eaton v. Price, 360 U.S. 246, 247, 79 S.Ct. 978, 978-79, 3 L.Ed.2d 1200 (1959). Accordingly, since the August plaintiffs' appeal to the Supreme Court presented precisely the questions at issue here, that affirmance constitutes binding precedent for the present case unless August has been overruled, explicitly or implicitly, by a subsequent Supreme Court decision. See Mandel v. Bradley, 432 U.S. 173, 176, 97 S.Ct. 2238, 2240, 53 L.Ed.2d 199 (1977); Hicks v. Miranda, 422 U.S. at 344-45, 95 S.Ct. at 2289-90; Doe v. Hodgson, 478 F.2d 537, 539 (2d Cir.1973) ("[W]e are bound by the Supreme Court's summary affirmances 'until such time as the Court informs us that we are not' " (quoting United States ex rel. Fein v. Deegan, 410 F.2d 13, 22 (2d Cir.), cert. denied, 395 U.S. 935, 89 S.Ct. 1997, 23 L.Ed.2d 450 (1969)).), cert. denied, 414 U.S. 1096, 94 S.Ct. 732, 38 L.Ed.2d 555 (1973). See generally 12 J. Moore, H. Bendix & B. Ringle, Moore's Federal Practice p 400.05-1 (2d ed. 1982). Thus, as the Supreme Court observed in Hicks v. Miranda, 422 U.S. at 344, 95 S.Ct. at 2289 (quoting Port Authority Bondholders Protective Committee v. Port of New York Authority, 387 F.2d 259, 263 n. 3 (2d Cir.1967)), " 'unless and until the Supreme Court should instruct otherwise, inferior federal courts had best adhere to the view that if the Court has branded a question unsubstantial, it remains so except when doctrinal developments indicate otherwise.' "
 
 
 27
 Plaintiffs contend that the Supreme Court's 1982 decision in Zobel v. Williams is such a doctrinal development and that August no longer constitutes binding precedent. We agree.
 
 C. Zobel v. Williams's Impact on August
 
 28
 In Zobel v. Williams, 457 U.S. 55, 102 S.Ct. 2309, 72 L.Ed.2d 672, the Court considered a 1980 Alaska statute that provided for the distribution of income derived from the state's natural resources to its residents in amounts proportional to the length of their respective residence in the state since Alaskan statehood in 1959. The Zobel plaintiffs challenged the statute as a denial of equal protection and of their right to travel. The Alaska Supreme Court found the statute constitutional. The Supreme Court of the United States found that it violated the Equal Protection Clause; five Justices concluded that the Alaska statute also violated plaintiffs' right to travel.
 
 1. Equal Protection
 
 29
 The Court began with the premise that scrutiny under the Equal Protection Clause of the Fourteenth Amendment is warranted whenever a state distributes benefits unequally. The Court noted that although some distinctions are subject to more rigorous scrutiny than others, it was not forced to determine whether the Alaska dividend-distribution scheme called for enhanced scrutiny because the Alaska statute--which "create[d] fixed, permanent distinctions between an ever-increasing number of perpetual classes of concededly bona fide residents, based on how long they ha[d] been in the State," 457 U.S. at 59, 102 S.Ct. at 2312--failed to pass even the minimum test of whether its distinctions rationally furthered a legitimate state purpose.
 
 
 30
 In support of the statutory scheme, Alaska had asserted that it furthered three state purposes, only two of which are pertinent here. First, the state argued that the scheme created a financial incentive for individuals to establish and maintain residence in Alaska. The Court held that the distinction drawn between newer and older residents was simply not rationally related to this purpose. Conceding, arguendo, that granting benefits to residents might provide an incentive for them to remain in Alaska, the Court pointed out that, absent such incentives, longtime residents of the state were less likely to leave the state than were newer residents; hence, the state's alleged goal would more likely be achieved if the larger monetary awards were given to the newer residents, not to the longtime residents. Id. at 61-62 & n. 9, 102 S.Ct. at 2313-14 & n. 9; see also id. at 70, 102 S.Ct. at 2318 (Brennan, J., concurring: "Permissible discriminations between persons must bear a rational relationship to their relevant characteristics" (emphasis in original).).
 
 
 31
 In addition, the state argued that the classification served to reward citizens for past contributions to the state. The Court held, relying on Shapiro v. Thompson, 394 U.S. at 632-33, 89 S.Ct. at 1330-31, and Vlandis v. Kline, 412 U.S. 441, 449-50 & n. 6, 93 S.Ct. 2230, 2235 & n. 6, 37 L.Ed.2d 63 (1973), that rewarding past contributions measured solely by past residence was simply not a legitimate state purpose. 457 U.S. at 63, 102 S.Ct. at 2314. It stated that
 
 
 32
 [i]f the states can make the amount of a cash dividend depend on length of residence, what would preclude varying university tuition on a sliding scale based on years of residence--or even limiting access to finite public facilities, eligibility for student loans, for civil service jobs, or for government contracts by length of domicile? Could states impose different taxes based on length of residence? Alaska's reasoning could open the door to state apportionment of other rights, benefits, and services according to length of residency. It would permit the states to divide citizens into expanding numbers of permanent classes. Such a result would be clearly impermissible.
 
 
 33
 Id. at 64, 102 S.Ct. at 2314-15 (footnotes omitted). The Court concluded that
 
 
 34
 [t]he only apparent justification for the ... program, "favoring established residents over new residents," is constitutionally unacceptable. Vlandis v. Kline, supra, [412 U.S.] at 450 [, 93 S.Ct. at 2235]. In our view Alaska has shown no valid state interests which are rationally served by the distinction it makes between citizens who established residence before 1959 and those who became residents since then.
 
 
 35
 Id. at 65, 102 S.Ct. at 2315. Accordingly, the Court held the challenged classification invalid.
 
 
 36
 We regard the Zobel Court's interpretation of the Equal Protection Clause as evincing several doctrinal developments that undercut the holding in August v. Bronstein. First, August concluded that the distinctions drawn by the New York provisions did not violate the Equal Protection Clause because they were not based on duration of residence. We read Zobel, however, as having implications for both durational and nondurational distinctions, for the Alaska statute not only increased the amount of the dividend based on the length of residency, it linked the awards to residence at a particular past time. As the majority pointed out, "[t]he Alaska statute also discriminates among long-time residents and even native-born residents," for an Alaska resident who was not such in 1960 because he was not born until 1962 would never be given a dividend for 1960. 457 U.S. at 59-60 n. 5, 102 S.Ct. at 2312 n. 5. We think it implicit in the majority opinion that the award of a dividend based solely upon past residency in the state at a particular time is impermissible under the Equal Protection Clause. And four of the concurring Justices stated explicitly that if the Alaska plan simply discriminated against resident 18-year-olds in favor of all residents of longer duration, "those discriminations would surely be constitutionally suspect." Id. at 69, 102 S.Ct. at 2317 (Brennan, J., concurring). Thus, we read Zobel to mean that it is not a legitimate state purpose to confer benefits based solely on past residency at a particular time.
 
 
 37
 Second, the August court concluded that the New York provisions were valid because the bonus points were intended to be a token of gratitude for the wartime service that had been performed by its residents. The Zobel Court held that the objective of rewarding residents for past contributions is not a legitimate state purpose when the measure of such contributions is simply past residency.
 
 
 38
 Third, the August court concluded that the preference accorded veterans who had been New York residents at the time of their entrance into the armed services was too modest to infringe the Equal Protection Clause. August 's de minimis view too has been seriously undermined by Zobel, where the value of each dividend unit, at the time, was $50 per year of residency. In August, the bonus of five points made a difference of nearly 70 places on the eligibility list. If the increment of a mere $50 per year of residency was sufficient to infringe the Equal Protection Clause, the denial of veteran bonus points that might enable their recipient to gain employment and possibly launch an entire career in the New York civil service cannot be regarded as too trivial to infringe that Clause.
 
 
 39
 In light of these rulings in Zobel, we believe that Zobel has so undermined the holding of August that August should no longer be deemed to reflect the Supreme Court's view of the classification implemented by the New York scheme. Accordingly, we conclude that we are free to examine with a fresh eye the equal protection challenge to the New York provisions mounted by the present plaintiffs. See Part II.D.1. below.
 
 2. The Right to Travel
 
 40
 Five Justices in Zobel also expressed the view that the Alaska statute violated the plaintiffs' constitutional right to travel. Justice Brennan, in a concurring opinion joined by Justices Marshall, Blackmun, and Powell, concluded that the right to travel "or, more precisely, the federal interest in free interstate migration," was clearly affected by Alaska's dividend-distribution scheme, 457 U.S. at 66, 102 S.Ct. at 2315, for if every state rewarded residents in proportion to the length of their residency, "the mobility so essential to the economic progress of our Nation, and so commonly accepted as a fundamental aspect of our social order, would not long survive," id. at 68, 102 S.Ct. at 2317. These four Justices found that the right to travel, which could be ascribed to any of a number of constitutional provisions, see Part II.D.2. below, and "achieve[d] its most forceful expression in the context of equal protection analysis," id. at 67, 102 S.Ct. at 2316, provided an alternative and independent rationale for holding the Alaska statute unconstitutional.
 
 
 41
 In a separate opinion concurring in the Court's judgment, Justice O'Connor concluded that the right to travel, as reflected in the Privileges and Immunities Clause of Article IV of the Constitution, and not equal protection, was the basis on which the Alaska statute should be struck down.
 
 
 42
 Although the Zobel Court expressly rested its invalidation of the Alaska statute on equal protection grounds, and although the five Justices who concluded that the statute violated the right to travel were not unanimous as to the constitutional basis for that conclusion, we believe the concurring opinions also reflect doctrinal development that undercuts August v. Bronstein 's holding that the New York provisions did not violate the right to travel. The only basis expressed by the August court for this ruling was that the bonus awarded under the New York scheme conferred so limited a benefit that it could not realistically be held to penalize the right to travel. 369 F.Supp. at 194. As we observed with respect to the August court's similar ruling on the equal protection challenge, the annual amounts at issue in Zobel were far less significant than the potential deprivations at issue here, i.e., a job and the possible launching of a career.
 
 
 43
 Accordingly, we feel free also to review, without the constraints of August, the plaintiffs' challenge to the New York provisions as an undue burden on the right to travel.
 
 
 44
 D. The Constitutionality of the New York Provisions
 
 
 45
 We turn, therefore, to the merits of plaintiffs' constitutional challenges to the New York provisions, which are in some ways like, and some ways unlike, the Alaska statute struck down in Zobel. They are like the Alaska scheme in that, as applied, they are plainly retrospective, focusing on the veteran's New York residence at the time he entered the armed services. The veteran's ability to satisfy the New York residence requirement is thus fixed. He either was a New York resident at the time of his initial induction or he was not; he cannot earn a change in status.
 
 
 46
 On the other hand, the New York provisions are different from the Alaska scheme in that those who met the New York residence requirement at the time they entered the armed services are given the right to enjoy the bonus only once. If a veteran is awarded the bonus points, thereby has his rank improved on two civil service eligibility lists, and is thereafter appointed to a position from one of those lists, he is not permitted to use the bonus points on the second list; and he will not be granted bonus points for any other civil service eligibility list. Thereafter, the veteran who once enjoyed a bonus must compete on an equal footing with other veterans. Thus, the distinction created by the New York provisions, though fixed, is not immutable.
 
 
 47
 Notwithstanding the fact that the veteran bonus is capable of being used up, we conclude that plaintiffs' constitutional challenges have merit because the distinction drawn between those otherwise qualifying veterans who were New York residents when inducted and those who were not does not rationally further a compelling, or even a legitimate, interest of the State.
 
 1. The Equal Protection Clause
 
 48
 The State advances four purposes in support of the challenged distinction: (a) compensating veterans for the service they have performed, (b) lessening the burden imposed by military service, (c) encouraging veterans to settle in New York and enter the State's civil service at the end of their military service, and (d) encouraging service in the armed forces. Each of these purposes can be framed neutrally, as we have stated it, focusing only on the veteran's nonresidential attributes; or it can be framed in terms of a desire to compensate or encourage only those who were New York residents at a given time in the past. Framed neutrally, without regard to the residence of the veteran to be compensated or encouraged, the purposes advanced have no rational relationship to the distinction drawn by the New York provisions. Framed strictly in terms of a desire to compensate or encourage only veterans who were New York residents at a given time in the past, the claimed purposes are not legitimate.
 
 
 49
 We note at the outset that we are not concerned here with the distinction the statutory scheme draws between veterans and nonveterans, see Regan v. Taxation With Representation, 461 U.S. 540, 551, 103 S.Ct. 1997, 2003, 76 L.Ed.2d 129 (1983); Personnel Administrator v. Feeney, 442 U.S. 256, 279 n. 25, 99 S.Ct. 2282, 2296 n. 25, 60 L.Ed.2d 870 (1979), or between wartime veterans and peacetime veterans, see Russell v. Hodges, 470 F.2d 212, or between current residents and current nonresidents. The universe on which we must focus is simply the universe of honorably discharged wartime veterans who are now residents of New York and who have passed a New York civil service examination. Our task is to determine whether, within that universe, the distinction between those who were New York residents at the time of induction and those who were not is one that rationally furthers a legitimate state interest. Conducting our analysis within this universe, we cannot see that any legitimate purpose advanced by the State has any rational relationship to the exclusion of those veterans who were not residents of the State when they entered the armed services.
 
 
 50
 A state's purpose of recognizing that wartime veterans have performed valuable service and of compensating them for such service is a legitimate state purpose. There can be no question that a state receives a benefit from the service of individuals in the armed forces. Having no armies of their own, states depend on the national military to protect them from invasion or attack; the national armed forces defend state political and economic interests both in the United States and abroad. Receiving such benefits from military service, a state has a legitimate interest in compensating those who render it. Yet while this purpose thus supports the existence of a veteran preference in general, it is not rationally related to the distinction drawn between time-of-induction New York residents and time-of-induction nonresidents. When an individual enters the armed forces, he joins the national armed forces, not the armed forces of a particular state. The benefits that accrue to a state from an individual's military service come by virtue of the state's membership in the nation. The benefits do not depend on the residence of the provider of the services. There would be no rational basis for suggesting that a soldier from New York performs more valuable service for his country--or for New York--than does a soldier from another state.
 
 
 51
 Similarly, there is nothing in the goal of lessening the burden imposed by military service that provides a basis for distinguishing between time-of-induction New York residents and nonresidents. There is no question that wartime military service can impose substantial burdens on an individual.
 
 
 52
 Veterans have "been obliged to drop their own affairs to take up the burdens of the nation," Boone v. Lightner, 319 U.S. 561, 575 [63 S.Ct. 1223, 1231, 87 L.Ed. 1587] (1943), " 'subjecting themselves to the mental and physical hazards as well as the economic and family detriments which are peculiar to military service and which do not exist in normal civil life.' " Johnson v. Robison, 415 U.S. 361, 380 [94 S.Ct. 1160, 1172, 39 L.Ed.2d 389] (1974) (emphasis deleted).
 
 
 53
 Regan v. Taxation With Representation, 461 U.S. at 550-51, 103 S.Ct. at 2003-04. Given the benefits that a state receives from an individual's military service, it has a legitimate interest in attempting to lighten the burden of that service. The existence of a veteran preference, with its promise of an enhanced opportunity for the steady income, high job security, and valuable fringe benefits that usually accompany a civil service position, can serve to lighten the burdens and compensate for the dislocations that frequently accompany wartime military service. But again, while this purpose is served by granting a preference to veterans in general, there appears to be no rational relationship between this purpose and the distinction between timeof-induction New York residents and nonresidents. Entry into the military occasions as much disruption for the Californian as it does for the New Yorker; each bears the burden of defending his country; each may be as much at risk. The personal burdens resulting from military service simply are not related to the state from which an individual entered the armed forces.
 
 
 54
 Likewise, the desire of New York to encourage veterans to settle in New York and join its civil service after concluding their military service seems entirely unrelated to the matter of their time-of-induction residence. If veterans are desirable residents, if their demonstrated patriotism, loyalty, discipline, and experience make them valuable as civil servants, there is nonetheless no basis for supposing that this desirability is linked to the fact that, prior to their military service, they lived in New York. Indeed, if a veteran had lived in New York most of his life but was a resident of another state at the time of his induction, he would not, even if he moved back to New York at the end of his military service, qualify for the veteran bonus points at issue here. Presumably both that veteran and a veteran who had never lived in New York would exhibit the same patriotism and loyalty and have gained the same experience and discipline as one who had been a New York resident at the moment of induction. The requirement of New York residence at the moment of induction thus eliminates the great majority of those whom, by hypothesis, the State considers desirable and is an entirely arbitrary basis on which to distinguish among the veterans whom New York wishes to attract to its civil service.
 
 
 55
 Finally, the goal of encouraging service in the armed forces is likewise a legitimate state interest that bears no rational relationship to a distinction based on residency. Since, as we have noted above, a state gains important benefits from service performed by individuals in the armed forces, it has a legitimate interest in encouraging individuals to perform such service. The benefits accruing to a state from the individual's service in the national armed forces, however, do not depend on the state in which the individual resided when he was inducted. Nor can the state's desire to express its own patriotism by encouraging its residents to serve the nation in time of need justify the challenged favoritism toward its own residents, for the nation could not survive on the strength of services of individuals from a single state. Thus, while a state's patriotism is exhibited by its encouragement of its residents to do their part, patriotism also requires recognition that their part is not the whole. The State thus does not have a legitimate interest in encouraging only its own residents to perform military service.
 
 
 56
 Each of the State's four purposes, therefore, framed neutrally without respect to the residence of the person to be rewarded or encouraged, is without rational relationship to the distinction drawn by the New York provisions in terms of the veteran's residence at the time of induction. Viewed in this light, the provisions run afoul of the Equal Protection Clause because the distinction bears no rational relationship to the veterans' "relevant characteristics." Zobel v. Williams, 457 U.S. at 70, 102 S.Ct. at 2318 (Brennan, J., concurring (emphasis in original)).
 
 
 57
 When we view the four stated purposes as designed to benefit or encourage only former New Yorkers, they fare no better, for the State's interest in favoring those who were residents at some former time over those who became residents at a later time is not legitimate. If the State's purpose is to compensate only prior New York resident veterans for their past services while leaving its newer resident veterans uncompensated, to lessen the burden of military service only on longer-term New Yorkers while leaving newer residents of New York unrelieved, to encourage New Yorkers to return to New York by placing newcomers at a disadvantage, or to encourage only New Yorkers to enter the armed services, the statutory scheme must fail in light of Zobel v. Williams's ruling that a purpose of " 'favoring established residents over new residents,' is constitutionally unacceptable." 457 U.S. at 65, 102 S.Ct. at 2315 (quoting Vlandis v. Kline, 412 U.S. at 450, 93 S.Ct. at 2235).
 
 
 58
 Accordingly, we conclude that the State has shown no valid interests that are rationally served by the New York provisions challenged here. Since the only apparent justification for the distinction between veterans who were and veterans who were not New York residents at the time of their induction is the favoring of those who are longer-term residents over newer residents, we conclude that the New York provisions violate the Equal Protection Clause.
 
 2. The Right To Travel
 
 59
 We also conclude that the distinction drawn by New York's statutory scheme violates the constitutionally protected right to travel. The textual source in the Constitution for such a right has been called "obscure," Zobel v. Williams, 457 U.S. at 60 n. 6, 102 S.Ct. at 2312-13 n. 6, with the basis for it being ascribed in different cases to the Privileges and Immunities Clause of the Fourteenth Amendment, see Edwards v. California, 314 U.S. 160, 178, 62 S.Ct. 164, 169, 86 L.Ed. 119 (1941) (Douglas, J., concurring); id. at 182-84, 62 S.Ct. at 171-72 (Jackson, J., concurring); Twining v. New Jersey, 211 U.S. 78, 97, 29 S.Ct. 14, 18, 53 L.Ed. 97 (1908), to the Privileges and Immunities Clause of Article IV, Sec. 2, see Zobel v. Williams, 457 U.S. at 78-81, 102 S.Ct. at 2322-24 (O'Connor, J., concurring in the judgment); Ward v. Maryland, 79 U.S. (12 Wall.) 418, 430, 20 L.Ed. 449 (1871); Paul v. Virginia, 75 U.S. (8 Wall.) 168, 180, 19 L.Ed. 357 (1869); to the Commerce Clause, see Edwards v. California; The Passenger Cases, 48 U.S. (7 How.) 283, 12 L.Ed. 702 (1849), or to the "essence" of the Constitution "that transformed a loose confederation of States into one Nation," Zobel v. Williams, 457 U.S. at 67, 102 S.Ct. 2316 (Brennan, J., concurring); see Shapiro v. Thompson, 394 U.S. at 630, 89 S.Ct. at 1329; The Passenger Cases, 48 U.S. (7 How.) at 491-92 (Taney, C.J., dissenting). See also Zobel v. Williams, 457 U.S. at 60 n. 6, 102 S.Ct. at 2312-13 n. 6 ("In reality, right to travel analysis refers to little more than a particular application of equal protection analysis."); id. at 66 n. 1, 102 S.Ct. at 2316 n. 1 (Brennan, J., concurring: "[W]here the 'right to travel' is involved, our cases leave no doubt that it will trigger intensified equal protection scrutiny.").
 
 
 60
 Whatever the origin, it is now indisputable that
 
 
 61
 "[t]he constitutional right to travel from one State to another ... occupies a position fundamental to the concept of our Federal Union. It is a right that has been firmly established and repeatedly recognized."
 
 
 62
 Shapiro v. Thompson, 394 U.S. at 630, 89 S.Ct. at 1329 (quoting United States v. Guest, 383 U.S. 745, 757, 86 S.Ct. 1170, 1178, 16 L.Ed.2d 239 (1966)); accord Zobel v. Williams, 457 U.S. at 67, 102 S.Ct. at 2316 (Brennan, J., concurring); Dunn v. Blumstein, 405 U.S. at 338, 92 S.Ct. at 1001; see also The Passenger Cases, 48 U.S. (7 How.) at 492 (Taney, C.J., dissenting: "For all the great purposes for which the Federal government was formed, we are one people, with one common country. We are all citizens of the United States; and, as members of the same community, must have the right to pass and repass through every part of it without interruption, as freely as in our own States.").
 
 
 63
 Merely having an effect on travel is not sufficient to raise an issue of constitutional dimension. For example, a statute that encourages travel does not burden the right.
 
 
 64
 A State clearly may undertake to enhance the advantages of industry, economy, and resources that make it a desirable place in which to live. In addition, a State may make residence within its boundaries more attractive by offering direct benefits to its citizens in the form of public services, lower taxes than other States offer, or direct distributions of its munificence. Through these means, one State may attract citizens of other States to join the numbers of its citizenry. That is a healthy form of rivalry: It inheres in the very idea of maintaining the States as independent sovereigns within a larger framework, and it is fully--indeed, necessarily--consistent with the Framers' further idea of joining these independent sovereigns into a single Nation.
 
 
 65
 Zobel v. Williams, 457 U.S. at 67-68, 102 S.Ct. at 2316-17 (Brennan, J., concurring). Rather, a statute implicates the constitutional right to travel when it actually deters such travel, see Crandall v. Nevada, 73 U.S. (6 Wall.) 35, 46, 18 L.Ed. 744 (1868); see also Shapiro v. Thompson, 394 U.S. at 629, 89 S.Ct. at 1328, or when impedance of travel is its primary objective, see Zobel v. Williams, 457 U.S. at 62 n. 9, 102 S.Ct. at 2313-14 n. 9; Shapiro v. Thompson, 394 U.S. at 628-31, 89 S.Ct. at 1328-30, or when it uses " 'any classification which serves to penalize the exercise of that right,' " Dunn v. Blumstein, 405 U.S. at 340, 92 S.Ct. at 1002 (quoting Shapiro v. Thompson, 394 U.S. at 634, 89 S.Ct. at 1331 (emphasis added)); accord Memorial Hospital v. Maricopa County, 415 U.S. 250, 258, 94 S.Ct. 1076, 1082, 39 L.Ed.2d 306 (1974); Oregon v. Mitchell, 400 U.S. 112, 238, 91 S.Ct. 260, 321, 27 L.Ed.2d 272 (1970) (separate opinion of Brennan, White, and Marshall, JJ.). Where a classification is found to implicate the right to travel, it will be upheld only if it is found to "be necessary to promote a compelling governmental interest." Shapiro v. Thompson, 394 U.S. at 634, 89 S.Ct. at 1331 (emphasis in original); accord Memorial Hospital v. Maricopa County, 415 U.S. at 258, 262, 94 S.Ct. at 1082, 1084; Dunn v. Blumstein, 405 U.S. at 339, 341, 92 S.Ct. at 1001, 1002; Oregon v. Mitchell, 400 U.S. at 238, 91 S.Ct. at 321 (separate opinion of Brennan, White, and Marshall, JJ.).
 
 
 66
 In Zobel v. Williams, the court noted that "the right to travel, when applied to residency requirements, protects new residents of a state from being disadvantaged because of their recent migration or from otherwise being treated differently from longer term residents." 457 U.S. at 60 n. 6, 102 S.Ct. at 2312-13 n. 6. In the present case, while New York's veteran preference scheme does not contain a numerically defined durational residency requirement such as those found unconstitutional in Shapiro v. Thompson, Dunn v. Blumstein, and Memorial Hospital v. Maricopa County, it plainly creates "distinctions between newcomers and longer term residents." Zobel v. Williams, 457 U.S. at 60 n. 6, 102 S.Ct. at 2312-13 n. 6. Veterans who choose to migrate to New York after they have entered the armed services are treated differently from those who migrated to the State before their induction or who are lifelong residents of the State.
 
 
 67
 Nor is it difficult to realize that the difference in treatment constitutes a penalty, for veterans who were not residents of New York at the time of their induction are told that if they wish to enter the civil service in New York, they may compete only at a disadvantage vis-a-vis veterans who were residents at that prior time. While the disadvantage may, over time, be lessened by the fact that veteran bonus points may be used only once, the fact remains that the veteran denied a preference by New York's scheme is disadvantaged each time a competitor uses a bonus; and the veteran denied the preference can never become entitled to bonus points, no matter how long he remains a New York resident. We are compelled to conclude, therefore, that veterans who did not enter the armed forces from New York are in effect penalized for traveling to New York.
 
 
 68
 Moreover, the fundamental detriment of the New York provisions is plain when we view the right to travel as a federal interest in free interstate migration. As the court in August v. Bronstein pointed out, other states accord benefits to their own resident veterans while denying them to others. 369 F.Supp. at 193. See, e.g., Del.Code Ann. tit. 29, Sec. 5935 (1983) (requiring time-of-induction residence for entitlement to veteran preference for civil service employment); R.I.Gen.Laws Secs. 36-3-3(10), 36-4-19 (1984) (requiring 6-month preinduction residence for entitlement to veteran preference for civil service employment). And we must recognize that, as intimated by the four concurring Justices in Zobel, if each state were free to grant benefits only to time-of-induction resident veterans while denying them to other veterans, the effect would be to discourage any veteran from moving from his home state, thereby lessening "the mobility so essential to the economic progress of our Nation, and so commonly accepted as a fundamental aspect of our social order." 457 U.S. at 68, 102 S.Ct. at 2317 (Brennan, J., concurring). Therefore, we hold that New York's veteran preference scheme burdens the right to travel and may be upheld only if necessary to promote a compelling state interest.
 
 
 69
 In light of our discussion in Part II.D.1. above, it is readily apparent that the New York scheme fails to satisfy the compelling-state-interest test. We have shown that to the extent that any of the purposes claimed by the State is legitimate, it is not rationally related to the distinction drawn between time-of-induction New York residents and non-residents. It follows a fortiori that even if any of these purposes, when framed so as to be legitimate, could be considered "compelling," the distinction drawn by the statute, which is not rationally related to the purpose, could hardly be deemed "necessary" to its achievement.
 
 
 70
 We hold, therefore, that the New York scheme impermissibly infringes the right to travel and, for this reason as well, must be declared unconstitutional.
 
 E. Severability
 
 71
 Having found that the classification created by the New York veteran preference scheme violates the Equal Protection Clause and the right to travel, we are faced with the question of the proper remedies for those violations. As the Supreme Court stated in Califano v. Westcott, 443 U.S. 76, 89, 99 S.Ct. 2655, 2663, 61 L.Ed.2d 382 (1979) (quoting Welsh v. United States, 398 U.S. 333, 361, 90 S.Ct. 1792, 1807, 26 L.Ed.2d 308 (1970) (Harlan, J., concurring in the judgment)),
 
 
 72
 "[w]here a statute is defective because of under-inclusion," ... "there exist two remedial alternatives: a court may either declare [the statute] a nullity and order that its benefits not extend to the class that the legislature intended to benefit, or it may extend the coverage of the statute to include those who are aggrieved by the exclusion."
 
 
 73
 Though the Court has stated that generally "extension, rather than nullification, is the proper course," Califano v. Westcott, 443 U.S. at 89, 99 S.Ct. at 2663; see Jimenez v. Weinberger, 417 U.S. 628, 637-38, 94 S.Ct. 2496, 2502, 41 L.Ed.2d 363 (1974), the question is ultimately one of legislative intent to be decided on the basis of "whether it more nearly accords with [the legislature's] wishes to eliminate the policy altogether or extend it to render what [the legislature] plainly did intend, constitutional," Welsh v. United States, 398 U.S. at 355-56, 90 S.Ct. at 1804 (Harlan, J., concurring in the judgment).
 
 
 74
 In the present case we have little difficulty in concluding that the New York legislature would prefer having the veteran preference extended to otherwise qualifying veterans who were not New York residents at the time of their induction into the armed forces to having it struck down in its entirety. As noted in Andrade v. Nadel, 477 F.Supp. 1275 (S.D.N.Y.1979), which struck down a provision of the veteran preference scheme that precluded legally resident aliens from receiving the preference points,
 
 
 75
 [t]here can be no doubt about the strength and depth of New York's commitment to a veterans' preference policy. This is demonstrated by more than a century of granting such preferences and by the fact that this provision has been frozen into the State Constitution itself. A determination that the entire veterans' preference policy is void would be unreasonable, and might have sudden and highly adverse effects on the New York Civil Service System ....
 
 
 76
 Id. at 1279. We agree and hold that the proper remedy here is to require the State and its agents to extend the veteran preference to otherwise qualifying veterans who were not residents of New York at the time they entered the armed forces.
 
 F. Proceedings on Remand
 
 77
 Plaintiffs' complaint requests a variety of relief, some of general application and some seeking vindication only of their individual rights. In the former category are the requests that the court enter a judgment declaring article V, Sec. 6, of the New York Constitution and Sec. 85(1)(a) of the New York Civil Service Law unconstitutional insofar as they deny bonus points to otherwise qualifying veterans who were not residents of New York at the time they entered the armed forces, and that the court permanently enjoin defendants from denying such veterans the bonus points. In light of our opinion today, the district court should enter a judgment granting such declaratory and injunctive relief.
 
 
 78
 Plaintiffs' entitlement to individual relief, however, should be the subject of further proceedings. As noted in Part II.A. above, defendants did not call into question plaintiffs' claims that they satisfied all of the unchallenged requirements of Sec. 85. There was perhaps occasion for defendants to take issue with those claims (if there was any basis for contesting them) since plaintiffs, in support of their motion for summary judgment, submitted a statement pursuant to Rule 3(g) of the Local Rules of the Southern District of New York, setting forth a number of facts that they contended showed they had met the unchallenged requirements of the New York provisions. Defendants did not submit a responsive Rule 3(g) statement that controverted any of these factual averrals, but instead cross-moved for summary judgment, submitting their own Rule 3(g) statement and implicitly taking the position that the factual averrals made by plaintiffs were not material in light of August v. Bronstein.
 
 
 79
 Local Rule 3(g) provides, in pertinent part, that "[a]ll material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party." While normally Rule 3(g) might be applied to deem defendants to have admitted that plaintiffs have met all of the requirements of the provisions in question except New York residence at the time of induction, we do not think it appropriate in the present case to conclude that defendants have made such a concession. Given defendants' reliance on the presumptively dispositive ruling in August for the proposition that plaintiffs could not obtain relief even if their assertions were true, and the fact that this is not simply a dispute between two private parties, we believe defendants should not be held to have conceded the facts asserted in plaintiffs' Rule 3(g) statement. If defendants believe there is any genuine issue as to whether either plaintiff met the other criteria for the award of the bonus points claimed, defendants should be allowed to assert that position. If, in response, either plaintiff cannot show his eligibility for the individual relief he requests, he should not receive it, since granting him such relief would adversely affect other candidates who, by hypothesis, would be more deserving.
 
 
 80
 Accordingly, as to the individual relief requested in the complaint, we remand to the district court for further proceedings to determine whether plaintiffs in fact met all of the other requirements of the New York provisions for the award of the claimed bonus points. If either plaintiff did meet those requirements, the court should require defendants to adjust accordingly his score and position on any eligibility list so long as that plaintiff has not received an appointment, either original or promotional, from an eligibility list reflecting the bonus points.
 
 
 81
 We also leave for consideration on remand such other questions as remain undetermined, including whether either plaintiff should receive immediate appointment, if so to what position, and whether awards of backpay or retroactive seniority are appropriate, as well as issues relating to defendants' defenses of immunity.CONCLUSION
 
 
 82
 The judgment of the district court is reversed and the case remanded for (1) entry of judgment (a) declaring that the denial of preference points to otherwise qualifying veterans solely on the ground that they were not New York residents at the time of their induction into the United States armed forces violates the Equal Protection Clause of the Fourteenth Amendment, and the constitutionally protected right to travel, and (b) permanently enjoining defendants from denying preference points to such veterans, and (2) for further proceedings to determine any issues relating to individual relief.
 
 OAKES, Circuit Judge (concurring):
 
 83
 I cannot, I fear, agree with the equal protection analysis of Judge Kearse's otherwise flawless opinion. It seems to me that within the traditional parameters of rational-relationship analysis, the distinction drawn by the veteran preference statute is not irrational. It is very difficult to say, e.g., that "[t]he personal burdens resulting from military service simply are not related to the state from which an individual entered the armed forces", opinion at 277, because those burdens may vary from state to state. Justice O'Connor's concurring opinion in Zobel v. Williams, 457 U.S. 55, 71, 102 S.Ct. 2309, 2318, 72 L.Ed.2d 672 (1982), points to the similar difficulties in that case, id. at 72-73, 102 S.Ct. at 2319-20. Since I am completely content with the right-to-travel, "federal interest in free interstate migration" analysis of Justice Brennan's Zobel opinion, which speaks also for Justices Marshall, Blackmun and Powell, 457 U.S. at 65-71, 102 S.Ct. at 2315-18, and which speaks approvingly of Justice O'Connor's Privileges and Immunities Clause analysis, 457 U.S. at 78-81, 102 S.Ct. at 2322-24, I would rest on that ground, "right-to-travel," which requires closer scrutiny of the New York veteran preference statute than traditional rational basis analysis would seemingly require. I thus concur.
 
 
 
 [1]
 The complaint requested judgment (1) declaring that the denial of additional points to otherwise qualifying veterans who were not residents of New York at the time of their entry into the armed forces violated the Equal Protection Clause and the right to travel; (2) permanently enjoining defendants from denying such veterans the additional points; (3) requiring that defendants (a) grant Soto-Lopez 5 additional points on his examination score, (b) grant Baez-Hernandez 10 additional points on each of his examination scores, (c) adjust both Soto-Lopez's and Baez-Hernandez's positions on the respective eligibility lists so as to reflect these higher scores, (d) immediately appoint Soto-Lopez and Baez-Hernandez to the civil service positions for which they had taken examinations, and (e) award them retroactive seniority and back pay; (4) granting plaintiffs costs, disbursements, and attorney's fees pursuant to 42 U.S.C. Sec. 1988 (1982); and (5) granting such further relief as the court might deem proper
 
 
 [2]
 Section 85(1)(a) of the Civil Service Law has been amended since August v. Bronstein in a respect that is not material here. Prior to 1982, both that section and the New York Constitution granted a veteran preference only to current "citizen[s]" of the State. In 1979, the restriction of the preference to citizens, denying it to legally resident alien veterans, was held to violate the Equal Protection Clause. Andrade v. Nadel, 477 F.Supp. 1275 (S.D.N.Y.1979). In consequence, in 1982, Sec. 85(1)(a) was amended to bring lawful permanent resident aliens within the definition of "veteran." Act of June 1, 1982, ch. 133, Sec. 5, 1982 N.Y.Laws 499, 501
 
 
 [3]
 The August court also relied on Gianatasio v. Kaplan, 142 Misc. 611, 255 N.Y.S. 102 (Sup.Ct.N.Y.County), aff'd mem., 257 N.Y. 531, 178 N.E. 782 (1931), dismissed for want of a substantial federal question, 284 U.S. 595, 52 S.Ct. 203, 76 L.Ed. 512 (1932), which had upheld the provisions under attack here, using, at least in part, a "right/privilege" analysis. The August court did, however, acknowledge that the right/privilege rationale of that decision had been substantially undermined by subsequent Supreme Court decisions such as Graham v. Richardson, 403 U.S. 365, 374, 91 S.Ct. 1848, 1853, 29 L.Ed.2d 534 (1971)
 None of the parties has addressed the continuing vitality of Gianatasio v. Kaplan, and, given the virtually complete transformation of equal protection analysis in the past half century and the abandonment of the right/privilege distinction upon which that decision relied, we conclude that Gianatasio need not be separately addressed. See Andrade v. Nadel, 477 F.Supp. at 1278.